1    Michael M. Maddigan (SBN 163450)
     **HOGAN LOVELLS US LLP**
2    1999 Avenue of the Stars, Suite 1400
     Los Angeles, CA  90067
3    Telephone: (310) 785-4600
     Facsimile: (310) 785-4601
4    michael.maddigan@hoganlovells.com

5    Lauren S. Colton (*Pro Hac Vice Forthcoming*)
     Marc A. Marinaccio (*Pro Hac Vice Forthcoming*)
6    **HOGAN LOVELLS US LLP**
     100 International Drive, Suite 2000
7    Baltimore, MD 21202
     Telephone: (410) 659-2700
8    Facsimile: (410) 659-2701
     lauren.colton@hoganlovells.com
9    marc.marinaccio@hoganlovells.com

10   Attorneys for Defendant KNIX WEAR INC.

11                    UNITED STATES DISTRICT COURT

12                    NORTHERN DISTRICT OF CALIFORNIA

13

14

15   GEMMA RIVERA and MARISA FRANZ, on          Case No. 5:22-cv-02137-EJD
     behalf of themselves and all others similarly
16   situated,                                   Hon. Edward J. Davila

17                   Plaintiffs,                 **DEFENDANT KNIX WEAR INC.'S**
                                                 **NOTICE OF MOTION AND MOTION**
18          v.                                   **TO DISMISS THE COMPLAINT OR,**
                                                 **IN THE ALTERNATIVE, TO STRIKE**
19   KNIX WEAR INC.,                             **NATIONWIDE CLASS**
                                                 **ALLEGATIONS; MEMORANDUM**
20                   Defendant.                  **OF POINTS AND AUTHORITIES IN**
                                                 **SUPPORT OF THEREOF**
21
                                                 Hearing Date: November 10, 2022
22
                                                 Time: 9:00 am
23
                                                 Courtroom: 4—5th Floor
24

25

26

27

28

1

# TABLE OF CONTENTS

2

Page

3  I.    INTRODUCTION ...................................................................................................1

4  II.   BACKGROUND ..................................................................................................3

5        A.    PFAS and Fluorine ..................................................................................3

6        B.    Knix, Menstrual Underwear and Knix's PFAS Testing ...........................5

7        C.    The Mamavation Blog Post.......................................................................6

8        D.    Knix's Fluorine Testing ...........................................................................8

9        E.    Plaintiffs' FAC .........................................................................................8

10 III.  LEGAL STANDARD ..........................................................................................9

11 IV.   ARGUMENT .....................................................................................................10

12       A.    Plaintiffs Do Not Plausibly Allege that Knix Products Contain Fluorine,
               Much Less Organic Fluorine that Can Suggest the Presence of PFAS.................10

13
14             1)    Plaintiffs Fail to Plausibly Allege that the Specific Knix Products
                     They Purchased Contain Fluorine or PFAS ................................11

15             2)    Plaintiffs Fail to Plausibly Allege that Any Knix Product Contains
                     the Type of Fluorine that Can Potentially Indicate the Presence of
16                   PFAS ........................................................................................13

17       B.    Plaintiffs Fail to Plead Their Fraud-Based Claims with Particularity...................16

18       C.    Several of Plaintiffs' Claims Fail for Additional, Independent Reasons ...............17

19             1)    Plaintiffs' Negligent Failure-to-Warn Claim (Count XV) Fails
                     Because They Do Not Plausibly Allege a Safety Risk or any Duty to
20                   Disclose .....................................................................................17

21             2)    Plaintiffs' Negligence-Based Claims (Counts XI and XV) Are
                     Barred by the Economic Loss Doctrine .......................................19

22
               3)    Plaintiffs' Implied Warranty Claim (Count III) Fails ................20
23
               4)    Plaintiffs' Magnuson-Moss Claim (Count XIV) Fails to Name 100
24                   Plaintiffs and Is Derivative of Their Warranty Claims ..............20

25             5)    Plaintiffs' Money Had and Received and Unjust Enrichment Claims
                     (Counts VIII and XII) Are Superfluous ......................................21

26
         D.    The Court Should Dismiss or Strike Plaintiffs' Nationwide Class
27             Allegations ..............................................................................................22

28             1)    The Court Lacks Specific Jurisdiction With Respect to Claims by
                     Non-California Residents.............................................................22

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2)   Non-Residents Cannot Assert Claims Against Knix under California Law for Conduct Occurring Outside of California .....................................24

3)   Plaintiffs Lack Standing to Assert Claims on Behalf of Non-California Residents under Other States' Laws .........................................25

V.   CONCLUSION .............................................................................................................25

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Andrews v. Procter & Gamble Co.*,
5       No. EDCV-19-00075 AG(SHKx), 2019 WL 6520045 (C.D. Cal. June 3, 2019)....................15

6
*In re Apple & AT&T iPad Unlimited Data Plan Litig.*,
7       802 F. Supp. 2d 1070 (N.D. Cal. 2011) .................................................................................22

8
*In re Arris Cable Modem Consumer Litig.*,
        No. 17-CV-01834-LHK, 2018 WL 288085 (N.D. Cal. Jan. 4, 2018) .....................................17

9
*Ashcroft v. Iqbal*,
10       556 U.S. 662 (2009) ................................................................................................................9

11
*Attia v. Google LLC*,
        No. 17-CV-06037-BLF, 2018 WL 2971049 (N.D. Cal. June 13, 2018) .................................10
12

13
*Beyer v. Symantec Corporation*
        333 F. Supp. 3d 966 (N.D. Cal. 2018) ...................................................................................24

14
*Birdsong v. Apple, Inc.*,
15       590 F.3d 955 (9th Cir. 2009).................................................................................................20

16
*Bristol-Myers Squibb Co. v. Super. Ct.*,
        137 S. Ct. 1773 (2017) ...........................................................................................................23
17

18
*Brown v. Madison Reed, Inc.*,
        No. 21-CV-01233-WHO, 2021 WL 3861457 (N.D. Cal. Aug. 30, 2021)...............................17

19
*Buckley v. Align Tech., Inc.*,
20       No. 5:13-CV-02812-EJD, 2014 WL 3778921 (N.D. Cal. July 31, 2014)
        (Davila, J.).............................................................................................................................21

21
*Carpenter v. PetSmart, Inc.*,
22       441 F. Supp. 3d 1028 (S.D. Cal. 2020) .....................................................................23, 24, 25

23
*Challenge Printing Co., Inc. v. Elecs. for Imaging Inc.*,
        500 F. Supp. 3d 952 (N.D. Cal. 2020) ...................................................................................16
24

25
*In re Connetics Corp. Sec. Litig.*,
        542 F. Supp. 2d 996 (N.D. Cal. 2008) ...................................................................................10

26
*Daniel v. Ford Motor Co.*,
27       806 F.3d 1217 (9th Cir. 2015).................................................................................................21

28
*Darisse v. Nest Labs, Inc.*,
        No. 5:14-cv-1363-BLF, 2016 WL 4385849 (N.D. Cal. Aug. 15, 2016)..................................25

*Davidson v. Kimberly–Clark Corp.*,
No. C 14–1783 PJH, 2014 WL 3919857 (N.D. Cal. Aug. 8, 2014) .........................................16

*In re Dental Supplies Antitrust Litig.*,
No. 16 Civ. 696 (BMC) (GRB), 2017 WL 4217115 (E.D.N.Y. Sept. 20, 2017).....................24

*In re Ditropan XL Antitrust Litig.*,
529 F. Supp. 2d 1098 (N.D. Cal. 2007) ...................................................................................25

*Dunkel v. eBay Inc.*,
No. 5:12-CV-01452-EJD, 2014 WL 1117886 (N.D. Cal. Mar. 19, 2014) ..............................22

*Floyd v. Am. Honda Motor Co.*,
966 F.3d 1027 (9th Cir. 2020).................................................................................................21

*Fraker v. Bayer Corp.*,
No. CVF08-1564 AWI GSA, 2009 WL 5865687 (E.D. Cal. Oct. 6, 2009) ...........................11

*Gaminde v. Lang Pharma Nutrition, Inc.*,
No. 1:18-CV-300, 2019 WL 1338724 (N.D.N.Y. Mar. 25, 2019) ...........................................12

*Hamman v. Cava Group, Inc.*,
No. 3:22-cv-00593-MMA-MSB, Dkt. No. 1 (S.D. Cal., Apr. 27, 2022).....................................5

*Hussain v. Burger King Corporation*,
No. 4:22-cv-02258-HSG, Dkt. No. 1 (N.D. Cal., Apr. 11, 2022).................................................5

*Isip v. Mercedes-Benz USA, LLC*,
155 Cal. App. 4th 19 (2007)......................................................................................................20

*Johns v. Bayer Corp.*,
No. 09CV1935DMS(JMA), 2010 WL 476688 (S.D. Cal. Feb. 9, 2010) ................................10

*Kanan v. Thinx Inc.*,
No. CV 20-10341 JVS, 2021 WL 4464200 (C.D. Cal. June 23, 2021)..............................19, 20

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009)...................................................................................................16

*Kwan v. SanMedica Int'l*,
854 F.3d 1088 (9th Cir. 2017)......................................................................................................9

*Ladore v. Sony Computer Ent. Am., LLC*,
75 F. Supp. 3d 1065 (N.D. Cal. 2014) .....................................................................................19

*Lazy Y Ranch Ltd. v. Behrens*,
546 F.3d 580 (9th Cir. 2008).......................................................................................................9

*Lejbm v. Transnat'l Foods, Inc.*,
No. 17-CV-1317-CAB-MDD, 2018 WL 1258256 (S.D. Cal. Mar. 12, 2018) ........................24

*Los Gatos Mercantile, Inc v. E.I. DuPont De Nemours & Co.*,
  No. 13-CV-01180-BLF, 2014 WL 4774611 (N.D. Cal. Sept. 22, 2014)...................................25

*Mariscal v. Graco, Inc.*,
  52 F. Supp. 3d 973 (N.D. Cal. 2014) .....................................................................................18

*Maxwell v. Unilever United States, Inc.*,
  No. 5:12-CV-01736-EJD, 2018 WL 1536761 (N.D. Cal. Mar. 29, 2018) ............................10

*Mazza v. Am. Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012)..................................................................................................25

*Meyer v. Colavita USA Inc.*,
  No. 10-61781-CIV, 2011 WL 13216980 (S.D. Fla. Sept. 13, 2011) ..................................12, 13

*Mollicone v. Universal Handicraft, Inc.*,
  No. 2:16-cv-07322-CAS, 2017 WL 440257 (C.D. Cal. Jan. 30, 2017)...................................25

*Moser v. Benefytt, Inc.*,
  8 F.4th 872 (9th Cir. 2021)................................................................................................22, 23

*Painter v. Blue Diamond Growers*,
  757 F. App'x 517 (9th Cir. 2018) ...........................................................................................14

*Pels v. Keurig Dr. Pepper, Inc.*,
  No. 19-CV-03052-SI, 2019 WL 5813422 (N.D. Cal. Nov. 7, 2019)........................................12

*Perez v. Monster Inc.*,
  149 F. Supp. 3d 1176 (N.D. Cal. 2016) ..................................................................................21

*Pistacchio v. Apple Inc.*,
  No. 4:20-CV-07034-YGR, 2021 WL 949422 (N.D. Cal. Mar. 11, 2021).............................25

*Puri v. Costco Wholesale Corp.*,
  No. 5:21-CV-01202-EJD, 2021 WL 6000078 (N.D. Cal. Dec. 20, 2021)..............................15

*Riva v. Pepsico, Inc.*,
  82 F. Supp. 3d 1045 (N.D. Cal. 2015) ..............................................................................19, 20

*Robichaud v. Speedy PC Software*,
  No. C 12 04730 LB, 2013 WL 818503 (N.D. Cal. Mar. 5, 2013) ...........................................16

*Rojas v. Gen. Mills, Inc.*,
  No. 12-CV-05099-WHO, 2013 WL 5568389 (N.D. Cal. Oct. 9, 2013)...................................22

*Samet v. Procter & Gamble Co.*,
  No. 5:12-CV-01891 PSG, 2013 WL 3124647 (N.D. Cal. June 18, 2013)...............................22

*Schloegel v. Edgewell Pers. Care Co.*,
  No. 4:21-CV-00631-DGK, 2022 WL 808694 (W.D. Mo. Mar. 16, 2022)..............................12

*Sheahan v. State Farm Gen. Ins. Co.*,
    442 F. Supp. 3d 1178 (N.D. Cal. 2020) ...................................................................17

*Smith v. LG Elecs. U.S.A., Inc.*,
    No. C 13-4361 PJH, 2014 WL 989742 (N.D. Cal. Mar. 11, 2014) ...........................20

*Snyder v. TAMKO Bldg. Prod., Inc.*,
    No. 1:15-CV-01892-TLN-KJN, 2019 WL 4747950 (E.D. Cal. Sept. 30, 2019).....................19

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007).....................................................................................10

*Turner v. City & Cnty. of S.F.*,
    788 F.3d 1206 (9th Cir. 2015)......................................................................................9

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003)............................................................................10, 16

*Wilson v. Frito-Lay N. Am., Inc.*,
    961 F. Supp. 2d 1134 (N.D. Cal. 2013) ...................................................................24

*Young v. Cree, Inc.*,
    No. 17-CV-06252-YGR, 2018 WL 1710181 (N.D. Cal. Apr. 9, 2018) ...................19

*Young v. Neurobrands, LLC*,
    No. 18-CV-05907-JSW, 2020 WL 11762212 (N.D. Cal. Oct. 15, 2020)................25

**Statutes**

Cal. Com. Code § 2314 ...............................................................................................20

**Other Authorities**

Fed. R. Civ. P. 9(b) .................................................................................2, 10, 16, 17

Fed. R. Civ. P. 11 ............................................................................................ *passim*

Fed. R. Civ. P. 12 ...............................................................................................22, 23

Fed. R. Civ. P. 23 ...............................................................................................23, 24

1

**NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT OR, IN THE ALTERNATIVE, TO STRIKE NATIONWIDE CLASS ALLEGATIONS**

2

3       PLEASE TAKE NOTICE that on November 10, 2022 at 9:00 am, before the Honorable

4  Edward J. Davila, Defendant Knix Wear Inc. ("Knix") will and hereby does move this Court for an

5  order dismissing Plaintiffs' First Amended Complaint ("FAC").

6       For the reasons set forth herein, Knix seeks an order dismissing the FAC in its entirety with

7  prejudice or, in the alternative, dismissing or striking Plaintiffs' nationwide class allegations.

8                    **MEMORANDUM OF POINTS AND AUTHORITIES**

9  **I.      INTRODUCTION**

10      This consumer protection lawsuit never should have been filed.  Plaintiffs contend that

11  Knix made misrepresentations when it assured its customers that Knix's menstrual underwear

12  products are safe and do not contain potentially harmful per- and polyfluoroalkyl substances

13  ("PFAS"), in response to a growing wave of media reports about the presence of PFAS in certain

14  consumer products.  Plaintiffs have no idea whether any of Knix's products contain PFAS.

15  Instead they contend – based entirely on anonymous testing reported in a blog called

16  "Mamavation" published by an affiliate "mom-blogger" who is paid by Knix's competitors to

17  recommend those competitors' products – that Knix's products contain fluorine, which Plaintiffs

18  (inaccurately) claim is an "indicator" that the products may also contain PFAS.  On this tenuous

19  basis, Plaintiffs allege that Knix's products are unsafe and that they would not have purchased the

20  products, or would have paid less for them, had Knix not represented that they are PFAS-free.

21      As set forth in Knix's Motion for Sanctions Pursuant to Rule 11 ("Rule 11 Motion"),

22  which will be filed shortly after this Motion to Dismiss,[1] Plaintiff's allegations that Knix's

23  _____

24  [1]  Knix attempted to serve its Rule 11 Motion on May 19, 2022, in time to file it simultaneously

25  with the present Motion, but Plaintiffs' counsel claims he did not receive the attachments to Knix's

26  service email until the following day.  Based on that representation, Knix will wait until tomorrow

27  to file its Rule 11 Motion to ensure strict compliance with Rule 11's "safe harbor" provision and

28  allow Plaintiffs a full 21 days to withdraw the FAC.  *See* Fed. R. Civ. P. 11(c)(2).

1  products contain fluorine, and their resulting suggestion that they may contain PFAS, should be

2  stricken.  Plaintiffs' counsel relied entirely on the Mamavation blog, did not conduct a reasonable

3  inquiry into the truth of those assertions before filing this lawsuit and, based on other lawsuits

4  they have filed, they are well aware that the type of testing reported by Mamavation (even

5  assuming the results were accurate) does ***not*** support Plaintiffs' allegations here.  (Rule 11 Mot. at

6  17-19).  Without those allegations, Plaintiffs' entire FAC fails and should be dismissed.

7        But even if the Court declines to sanction Plaintiffs' counsel for their blind reliance on

8  Mamavation's report of anonymous testing, the entire FAC still must be dismissed because

9  Plaintiffs fail to plausibly allege that the Knix products they purchased contain fluorine, much

10  less the type of fluorine that can indicate the presence of PFAS.  Mamavation only claims to have

11  tested two specific Knix products – and it obtained wildly different results for each product.  Yet

12  Plaintiffs do not allege that they purchased those particular products (they do not even identify

13  which Knix products they purchased), nor do they put forth any allegations of fact to suggest that

14  the products they actually purchased contain fluorine.  Moreover, Mamavation only tested for

15  ***total*** fluorine, but as both Mamavation and Plaintiffs' counsel have acknowledged, total fluorine

16  testing does ***not*** indicate whether a product contains ***organic*** fluorine (as opposed to inorganic

17  fluorides that exist naturally in the environment), and only ***organic*** fluorine can ***potentially***

18  suggest the presence of PFAS.  Plaintiffs thus fail to state a plausible claim under any theory.

19        Plaintiffs also fail to plead their claims with the level of particularity required by Rule

20  9(b), which applies to all causes of action asserted in the FAC.  They do not, for example, explain

21  (beyond conclusory boilerplate) how any particular statement by Knix was false or misleading,

22  identify which (if any) of such statements they relied upon in deciding to purchase Knix products

23  or sufficiently plead any cognizable injury.  Several of Plaintiffs' claims fail for additional,

24  independent reasons.  Their negligent failure-to-warn claim fails because Plaintiffs do not

25  plausibly allege the presence of any particular PFAS that causes a risk of harm, much less that

26  Knix was aware of any such risk or had a duty to disclose such information.  That claim, and their

27  claim for negligent misrepresentation, also are barred by the economic loss doctrine because they

28  have not alleged any physical harm or other non-economic injury.  Plaintiffs' implied warranty

1   claim fails because they do not plausibly allege that Knix's products failed their intended purpose

2   (i.e., for use as period underwear), or that they purchased Knix's product for any other purpose.

3   Plaintiffs' claim for violation of the Magnuson-Moss Warranty Act ("MMWA") must be

4   dismissed because they do not name at least 100 plaintiffs, and because the claim is derivative of

5   their failed express and implied warranty claims.  Their claims for unjust enrichment and money

6   had and received are duplicative of their consumer protection claims, and should be dismissed.

7       The Court also should dismiss or strike Plaintiffs' nationwide class allegations, because

8   the Court lacks jurisdiction over Knix with respect to the claims of non-California residents for

9   products purchased outside of California, non-residents cannot assert California-law claims

10  against Knix for conduct that has no nexus to California, and Plaintiffs lack standing to assert

11  (and also have not sufficiently pled) claims under the laws of other states.

12  **II.     BACKGROUND**

13      **A.     PFAS and Fluorine**

14      PFAS (per- and polyfluoroalkyl substances) are synthetic chemicals that are widely used

15  by some manufacturers in various consumer, commercial and industrial products, including in

16  some apparel products as stain- and water-resistant agents.  (FAC ¶¶ 2, 29-30; *see also* Ex. 1).[2]

17  There are thousands of different PFAS, some of which have been more widely used and studied

18  than others, but one common characteristic is that many PFAS break down very slowly.  (FAC ¶

19  39; Ex. 1).  Plaintiffs broadly allege that PFAS have been associated with various health effects in

20  humans, and cite to summaries of studies positing that certain levels of exposure to certain

21  specific PFAS chemicals may be harmful.  (FAC ¶¶ 2-3, 59-61).  However, the EPA has advised

22  that health effects associated with PFAS are "difficult to specify" for several reasons, including

23  that "[t]here are thousands of PFAS with potentially varying effects of toxicity levels, yet most

24  studies focus on a limited number of better known PFAS chemicals," and that the "types and uses

25  ────────────────────

26  [2]  A copy of United States Environmental Protection Agency ("EPA"), "PFAS Explained," is

27  attached as Exhibit 1.  The Court can take judicial notice of this document.  (*See* Request for

28  Judicial Notice ("RJN") at 3; FAC ¶ 59).

of PFAS change over time, which makes it challenging to track and assess how exposure to these chemicals occurs and how they will affect human health." (Ex. 2).[3]  Indeed, none of the scientific studies or regulatory authorities cited in the FAC stand for the proposition that *all* PFAS are harmful; rather, they simply posit that certain types of exposure to some PFAS might be harmful in certain circumstances.  (*See* FAC ¶¶ 59-64 & cited sources).

All PFAS compounds contain the element fluorine (that is the "F" in "PFAS").  However, fluorine can exist in either *organic* fluorine or *inorganic* fluoride molecules, which have distinct chemical properties.  The type of fluorine contained in PFAS is *organic* fluorine.[4]  PFAS do *not* contain *inorganic* fluoride, which exist naturally in the environment in several different forms, including in drinking water and salt water.  Inorganic fluorides (compounds containing fluorine) also are found in common food items, such as tea, raisins, potatoes and lettuce.  (*See* Ex. 3).[5]

One way to screen for the potential presence of PFAS in a product is to test it for *organic* fluorine.  Importantly, however, testing a product for *total* fluorine, without first taking steps to remove *inorganic* sources of fluorine from the sample, is not a reliable indicator of whether the product could contain PFAS, because positive total fluorine results could be caused by the presence of inorganic rather than organic fluorine.  Plaintiffs' counsel have acknowledged this crucial distinction in at least three separate complaints they have filed in PFAS lawsuits against other companies.  In *Solis v. Covergirl Cosmetics*, for example, Plaintiffs' counsel based their

---

[3]  A copy of EPA, "Our Current Understanding of the Human Health and Environmental Risks of PFAS," is attached as Exhibit 2.  (*See* RJN at 4-5).

[4]  PFAS are organic fluorinated compounds, meaning that they contain carbon.  The root "*alkyl*" in the term polyfluoro*alkyl* substances (PFAS) refers to alkanes, a specific type of carbon-based structure.  By definition, chemicals that contain carbon are organic chemicals, whereas chemicals that do not contain carbon are inorganic chemicals.  *See generally* "PFAS Fact Sheets" (Apr. 2022), available at https://pfas-1.itrcweb.org/2-2-chemistry-terminology-and-acronyms/.

[5]  A copy of Anne Helmenstine, "What Is Fluoride? Fluoride vs. Fluorine," Science Notes (Sept. 30, 2021), is attached as Exhibit 3.  (*See* RJN at 3; FAC ¶ 54 n. 34).

4

claims on testing for **organic** fluorine, precisely because, in their words, it "identif[ies] a quantity of organofluorine compounds (e.g., PFAS) and excludes the possibility that fluorine may be present from other or natural sources."  No. 3:22-cv-00400-BAS-NLS, Dkt. No. 1 at ¶ 4 (S.D. Cal., Mar. 25, 2022); *see also Hamman v. Cava Group, Inc.*, No. 3:22-cv-00593-MMA-MSB, Dkt. No. 1 at ¶ 4 n.6 (S.D. Cal., Apr. 27, 2022); *Hussain v. Burger King Corporation*, No. 4:22-cv-02258-HSG, Dkt. No. 1 at ¶ 4 n.6 (N.D. Cal., Apr. 11, 2022).  Mamavation, the source on which Plaintiffs base their claims in this case, also has acknowledged that total fluorine testing alone does **not** indicate the presence of PFAS, and that "[products with] detectable amounts [of total fluorine] required a second test to determine organic fluorine."  (Ex. 4).[6]  The EPA likewise has acknowledged this crucial distinction in published guidance relating to the use of fluorine testing to detect potential PFAS, and has expressly advised the removal of sources of inorganic fluoride prior to testing.  (Rule 11 Mot. at 6-7 (citing sources)).

### B.   Knix, Menstrual Underwear and Knix's PFAS Testing

Knix is a Toronto-based company that manufacturers intimates and leisurewear products, including various types of menstrual underwear.  (FAC ¶¶ 1, 12).  In January 2020, several media outlets began expressing concerns about the potential presence of PFAS in menstrual underwear, sparked by an investigative report alleging that products manufactured by a Knix competitor, called Thinx, contained PFAS.  (FAC ¶ 26; see also Ex. 5).[7]  Eager to distinguish its products from Thinx's, on January 21, 2020, Knix published a post on its website to address the issue and assure Knix's customers that, based on testing conducted by multiple third-party laboratories, Knix's products are safe and free of toxic chemicals.  (FAC ¶ 25; *see also* Ex. 6).[8]  Plaintiffs

---

[6]  A copy of "Mamavation: PFAS Found in Organic Tomato Pasta Sauce – Purchasing Guide 2022" (Apr. 12, 2022) is attached as Exhibit 4 (*see* RJN at 5); *see also* Rule 11 Mot. at 11, n.18.

[7]  A copy of Elizabeth Segran, "Period Underwear Could Be Toxic. Should It Be Regulated?" (Jan. 23, 2020), is attached as Exhibit 5.  (*See* RJN at 3-4; FAC ¶ 26).

[8]  A copy of "Knix News:  Yes. Knix Underwear are Toxic Chemical Free" (Jan. 21, 2020), is attached as Exhibit 6.  (*See* RJN at 3-4; FAC ¶¶ 43-44).

selectively quote a portion of that website post in the FAC, in which Knix explained that it had always taken care in crafting safe and effective products, including by avoiding stain repellents and fabric treatments, and by having its fabrics manufactured in Italy precisely because the European Union has laws that restrict the use of PFAS chemicals.  (*Id.*).  Plaintiffs, however, omit the most important part of the post – where Knix clearly explains that in January 2020 it began testing its products for PFAS and attaches copies of testing reports so that Knix customers can see the basis for Knix's claims:

> **What's in our Underwear?**
>
> Because of these [European Union] laws, we had initially never tested for PFAS. However, due to news in early 2020, we pursued extra third-party testing for peace of mind. As an industry standard, these tests only spot 20-30 main chemicals (like PFOA), which our Leakproof Underwear were cleared for. You can save and read the report at the bottom of this post.

(Ex. 6 at 1, 3-10).  Plaintiffs also quote a portion of one of Knix's product pages, which states that Knix's products are PFAS free, "meaning they've been tested and cleared for harmful substances."  (FAC ¶ 25).  That product page informs consumers that they can "read copies of the [testing] reports," and includes a link to the January 21, 2020 post containing those reports.  (*Id.*).

**C.**      **The Mamavation Blog Post**

In May and July 2021, an affiliate blogger who operates a blog called "Mamavation" published a series of posts claiming that various period underwear brands' products, including Knix products, had tested positive for fluorine and thus, according to her, contained PFAS.  (FAC ¶¶ 31, 37-39; Exs. 7, 8).[9]  Mamavation claims that two styles of Knix period underwear – specifically, Knix High Rise underwear and Knix Boyshorts – were tested for "total fluorine" by an "EPA-certified laboratory," and that the lab found 373 ppm of fluorine in the High Rise product and 43 ppm of fluorine in the Boyshorts product.  (*Id.*).  Mamavation does not identify

---

[9]  A copy of "Mamavation: Report: 65% of Period Underwear Tested Likely Contaminated with PFAS Chemicals" (May 24, 2021) is attached as Exhibit 7.  (*See* RJN at 3-4; FAC ¶¶ 4-5, 31, 33).  A copy of "Mamavation:  Knix Period Underwear 'PFAS' Forever Chemicals Laboratory Results" (July 14, 2021) is attached as Exhibit 8.  (*See* RJN at 5).

the lab or explain what is meant by "EPA-certified" – an odd descriptor given that the EPA does not require or award any "certification" for conducting PFAS or fluorine testing of textile products, nor has it promulgated any relevant standards for such testing.  Mamavation also does not provide a copy of the test results themselves.  Nor does it provide any information regarding the testing procedures, laboratory conditions or what precautions (if any) were taken to ensure that the results were not impacted by external contamination.  And, it does not claim to have tested any Knix product for the presence of *organic* fluorine, notwithstanding Mamavation's acknowledgement in other posts that testing for organic fluorine is "required" to support a suggestion that the product contains PFAS.  (Ex. 4 at 12).

Nevertheless, Mamavation ranked Knix's High Rise product as "not our favorite" because her testing purportedly found above 100 ppm total fluorine.  (Ex. 7).  Of course, that 100 ppm threshold is *not* based on any industry standard applicable to fabrics.  Mamavation simply coopted a standard "used to determine if food packaging is compostable," and assumed that standard would translate to fabrics.  (*Id.*).  The blog acknowledges that it is "not a perfect standard," "make[s] no claims as to how much fluorine is dangerous vs. safe for dermal exposure in your vaginal area" (if any) and admits that "[w]e simply do not know."  (*Id.*).[10]

Tellingly, Mamavation receives compensation for recommending products by brands that meet its arbitrary thresholds.  It even provides "affiliate links" and discount codes to websites operated by half-a-dozen Knix competitors and encourages its readers to purchase those competitors' menstrual underwear products – a clear conflict of interest.  (Ex. 8).  Indeed, one of the Knix-related posts was publicly criticized in comments by readers for failing to clearly disclose that Mamavation received a commission based on reader purchases.  (Ex. 7).[11]

---

[10]  Mamavation uses different standards for testing different products, such as a 10 ppm standard for activewear, and appears to select arbitrary thresholds that will allow for sensationalized headlines.  (*See* Rule 11 Mot. at 11-12 (citing sources)).

[11]  Other Mamavation posts further make clear that Mamavation receives compensation from the Knix competitors she recommends.  (*See* Rule 11 Mot. at 12 (citing sources)).

### D. Knix's Fluorine Testing

In June 2021, Knix updated its January 21, 2020 blog post to include fluorine testing results.  (FAC ¶ 27; Ex. 6 at 1-2).  Knix explained that it had been conducting routine fluorine testing since January 2020 and that testing detected no fluorine in Knix's products:

*June 3, 2021 Update:*

There are 9000 different kinds of PFAS, but there aren't tests available for all of them yet. However as a community member gratefully pointed out to us, *all* PFAS contain Fluorine (this is the F in PFAS). What does this mean? If our underwear was free from Fluorine, we'd be free of all PFAS.

Because of this feedback, we sought out extra testing to confirm that there is **no Fluorine in our Leakproof Underwear.**

After our initial tests, we began ongoing testing for Fluorine in January 2020, and we are happy to report that our Leakproof Underwear are **Fluorine free.** Testing for Fluorine is now part of our testing process going forward. You can check out what a negative Fluorine report looks like at the bottom of this post.

(*Id.*).  Unlike Mamavation, Knix also attached a copy of a sample fluorine test report upon which Knix's fluorine-related representations were based.  (Ex. 6 at 3).  That test report shows that fluorine was "Not Detected."  (*Id.*).  Knix has since updated the post to add a more recent sample of its fluorine test results, also showing that fluorine was "Not Detected."  (*Id.* at 8-10).

### E. Plaintiffs' FAC

California residents Gemma Rivera and Marisa Franz allege that they purchased Knix menstrual underwear directly from Knix's website in February 2022 and May 2021, respectively.  (FAC ¶¶ 8, 10).  They do not specify which particular Knix product(s) they purchased, but each generally alleges that she "reviewed the labeling, packaging, and marketing materials of her Product, including those set out herein, including that the Product was safe and sustainable, free of fluorine and otherwise PFAS-free."  (*Id.*).  Plaintiffs contend that those representations are false, based entirely on their assertion that Knix products contain "fluorine indicative of PFAS," which in turn is based entirely on Mamavation's report of anonymous total fluorine test results.  (*Id.* at ¶¶

4, 9, 88).[12]   They contend they relied on these so-called misrepresentations in making their purchases, and that they otherwise would not have purchased the product or would have paid less for it.  (*Id.* at ¶¶ 8, 10, 77).

Based on these allegations, Plaintiffs assert no less than 15 separate counts for various purported consumer protection violations, breaches of warranty and other fraud-based claims. Plaintiffs purport to represent a nationwide class of "all persons in the United Sates who purchased the Product," and also a California subclass of "all persons who purchased the Product in the State of California."  (FAC ¶¶ 89-90).  The term "the Product" is not defined, but the FAC defines the term "Products" as "Defendant's menstrual underwear."  (FAC ¶ 1).  Plaintiffs purport to assert their California Unfair Competition Law ("UCL"), Consumer Legal Remedies Act ("CLRA"), False Advertising Law ("FAL") and implied warranty claims on behalf of the California subclass only (FAC ¶¶ 99, 114, 126, 138), while the remaining claims are asserted on behalf of the nationwide class.

## III.   **LEGAL STANDARD**

To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In assessing the adequacy of the complaint, the Court must accept all well-pleaded facts as true and construe them in the light most favorable to the plaintiff.  *See Turner v. City & Cnty. of S.F.*, 788 F.3d 1206, 1210 (9th Cir. 2015).  "[C]onclusory allegations of law and unwarranted inferences, however, are insufficient to avoid dismissal." *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017) (quotations omitted).  And, the Court need not accept as true allegations that are contradicted by documents cited in the complaint or otherwise subject to judicial notice.  *Lazy Y*

---

[12]  In their original Complaint, Plaintiffs directly alleged that Knix products contain PFAS (ECF No. 1 at ¶¶ 1, 5-7, 49, 69), but they removed those allegations after Knix's counsel sent a letter explaining several reasons why Mamavation's testing is unreliable and insufficient to support the filing of lawsuit consistent with Rule 11 obligations. (*See* Rule 11 Mot. at 13 & Ex. 19 thereto).

*Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

Claims that sound in fraud – like Plaintiffs' claims here – are subject to the heightened pleading requirements of Rule 9(b). *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102 (9th Cir. 2003). A plaintiff "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The allegations must contain "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations," and must be accompanied by the "who, what, when, where, and how" of the misconduct charged. *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007); *Vess*, 317 F.3d at 1106 (9th Cir. 2003) (citation omitted). Additionally, "the plaintiff must plead facts explaining why the statement was false when it was made." *Maxwell v. Unilever United States, Inc.*, No. 5:12-CV-01736-EJD, 2018 WL 1536761, at *2 (N.D. Cal. Mar. 29, 2018) (Davila, J.) (quotations omitted).

## IV.  ARGUMENT

### A.  Plaintiffs Do Not Plausibly Allege that Knix Products Contain Fluorine, Much Less Organic Fluorine that Can Suggest the Presence of PFAS

All of Plaintiffs' claims hinge on their contention that Knix products contain "fluorine indicative of PFAS." Without that fundamental allegation, Plaintiffs cannot meaningfully assert that any Knix statements are false or misleading, nor can they plead any injury sufficient to establish Article III standing. Plaintiffs' contention should be stricken from the FAC pursuant to Rule 11, because it is based entirely on reporting of anonymous testing results by a financially-interested blog affiliated with Knix's competitors, rather than any reasonable investigation by Plaintiffs or their counsel. (See Rule 11 Mot. at 17-19.) Courts in this circuit regularly dismiss complaints in similar circumstances after striking allegations of purported fact cribbed from third-party sources without any independent attorney investigation. *See, e.g.*, *In re Connetics Corp. Sec. Litig.*, 542 F. Supp. 2d 996, 1005 (N.D. Cal. 2008) (dismissing complaint after striking allegations made without reasonable inquiry under Rule 11); *Attia v. Google LLC*, No. 17-CV-06037-BLF, 2018 WL 2971049, at *15 (N.D. Cal. June 13, 2018) (dismissing fraud claim based entirely on allegations "regurgitate[d]" from complaints in other lawsuits); *Johns v. Bayer Corp.*, No. 09CV1935DMS(JMA), 2010 WL 476688, at *4 (S.D. Cal. Feb. 9, 2010) (dismissing

10

1    consumer protection claims after striking allegations taken from consumer watchdog complaint

2    letter with no independent attorney investigation); *Fraker v. Bayer Corp.*, No. CVF08-1564 AWI

3    GSA, 2009 WL 5865687, at *6 (E.D. Cal. Oct. 6, 2009) (dismissing consumer fraud claims after

4    striking allegations cribbed from an FTC consent decree).  Here, Plaintiffs have ***no idea*** whether

5    ***any*** Knix product actually tested positive for fluorine, because their counsel did nothing to

6    confirm Mamavation's report.  The entire case should be dismissed for that reason alone.

7         But even if the Court is inclined to credit Mamavation's purported testing and assume, for

8    purposes of this motion, that a single sample of two Knix products tested positive for total

9    fluorine, that testing still does not provide a plausible basis for Plaintiff's claims here.

### *1) Plaintiffs Fail to Plausibly Allege that the Specific Knix Products They Purchased Contain Fluorine or PFAS*

12        Plaintiffs do not allege that they purchased either of the two Knix products Mamavation

13   claims to have tested, nor do they allege any other basis to plausibly suggest that the specific

14   Knix products they did purchase contain fluorine.  For this reason, they cannot allege that any

15   representation Knix made – including that its products are "PFAS free" or "fluorine free" – were

16   false with respect to the products they purchased, and also cannot allege a particularized injury

17   sufficient to establish Article III standing.  A court in the Western District of Missouri recently

18   addressed a similar situation in dismissing a consumer protection lawsuit alleging that sunscreen

19   contained benzene based solely on unverified third-party testing:

20        Plaintiff alleges that some samples of Banana Boat sunscreen products—
          including samples of the product she purchased—have been found to be
21        adulterated with benzene, a known human carcinogen.  She alleges that Edgewell
          failed to disclose via labeling or advertising that Banana Boat sunscreen products
22        may contain benzene. However, Plaintiff does not allege that the specific product
          she purchased was adulterated with benzene.
23        . . .
24        In order to establish an injury-in-fact at the pleading stage, Plaintiff must plead
          facts showing a "concrete and particularized" "invasion of a legally protected
25        interest." *Lujan*, 504 U.S. at 560. This means the alleged injury "must affect the
          plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n. 1. "In the
26        context of defective products, 'it is not enough for a plaintiff to allege that a
          product line contains a defect or that a product is at risk for manifesting this
27        defect; rather, the plaintiffs must allege that ***their*** product ***actually exhibited*** the
          alleged defect.'" *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1030 (8th Cir.

28

2014) (quoting *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 616 (8th Cir. 2011)).

. . .

Just as in *Wallace*, Plaintiff has failed to allege that she actually purchased Banana Boat Sunscreen products which were adulterated with benzene, and thus has failed to allege that she did not receive exactly what Edgewell promised: an unadulterated sunscreen product.

*Schloegel v. Edgewell Pers. Care Co.*, No. 4:21-CV-00631-DGK, 2022 WL 808694, at *1-2 (W.D. Mo. Mar. 16, 2022) (record citations omitted);[13] *see also Pels v. Keurig Dr. Pepper, Inc.*, No. 19-CV-03052-SI, 2019 WL 5813422, at *5 (N.D. Cal. Nov. 7, 2019) (dismissing consumer protection lawsuit for lack of standing because "plaintiff has failed to plead a particularized injury by failing to plead the water *he* purchased contained violative arsenic levels"); *Gaminde v. Lang Pharma Nutrition, Inc.*, No. 1:18-CV-300 (GLS/DEP), 2019 WL 1338724, at *2 (N.D.N.Y. Mar. 25, 2019) ("[I]t is speculation to allege that because two CVS Krill Oil bottles in a USDA study were found to have less than the stated amount of Omega-3 Krill Oil, the bottle that Gaminde purchased must as well."); *Meyer v. Colavita USA Inc.*, No. 10-61781-CIV, 2011 WL 13216980, at *5 (S.D. Fla. Sept. 13, 2011) (dismissing consumer protection claims based on "speculation and unwarranted extrapolation" from study with small sample size).

As in *Sloegel*, here Plaintiffs have no basis to allege that the specific products they purchased contain fluorine, PFAS or any other harmful chemical, and thus cannot plausibly allege that they did not receive "exactly what [Knix] promised." *Schloegel*, 2022 WL 808694, at *2. Indeed, Plaintiffs' claims are even less plausible than those in *Schloegel*. Here, Plaintiffs do not even claim that they purchased products from the same product lines Mamavation tested. Mamavation claims that it tested two Knix products for total fluorine – specifically, Knix's High Rise underwear, in which the unidentified lab purportedly found 373 ppm total fluorine, and Knix's Boyshorts, in which the lab purportedly found 43 ppm total fluorine. (Ex. 8 at 4). Plaintiffs do not

---

[13] Incidentally, *Schloegel's* allegation that the product contained benzene was based on testing of samples conducted by a third-party lab and reported in citizen's petition seeking an FDA recall. *See Schloegel*, No. 4:21-CV-00631-DGK, Dkt. No. 1-1 at ¶¶ 9-10 (W.D. Mo., Sept. 1, 2021).

contend that they purchased Knix's High Rise Underwear or Boyshorts.  They simply claim that they purchased "the Products," which they define as "Defendant's menstrual underwear."  (FAC ¶¶ 1, 8, 10).  But Mamavation does not claim that *all* of Knix's menstrual underwear contains "heightened levels of fluorine" – it has no idea, because it only tested the High Rise and the Boyshorts products.  Neither do Plaintiffs.  Nor do Plaintiffs allege any other facts that could possibly support extrapolating test results for two samples of those particular products to all of Knix's products.  As the *Meyer* court explained in dismissing similar claims, "Plaintiffs base their lawsuit[] on unwarranted deductions of fact and conclusory allegations in the hope that discovery will in fact validate the foundation for their claims." *Meyer*, 2011 WL 13216980, at *5.

Even if Plaintiffs did purchase products from the same lines Mamavation tested, they made their purchases long after Mamavation purchased the samples that supposedly were tested.  Plaintiffs expressly acknowledge that "the composition of the Products may change over time," (FAC ¶¶ 9, 11), yet the only support they cite for their contention that their Knix products contain fluorine is testing of samples Mamavation purchased six to eighteen months before Plaintiffs claim to have purchased their unidentified Knix products.  (*Compare* Ex. 8 at 4 (Mamavation tested samples purchased between May and December 2020) *with* FAC ¶¶ 8, 10 (Ms. Rivera purchased her Knix product in February 2022 and Ms. Franz purchased hers in May 2021)).  Without a plausible basis to allege that the specific Knix products they purchased contain fluorine, Plaintiffs cannot viably assert that Knix made misrepresentations to them or that they suffered any injury sufficient to confer Article III standing.

### 2) *Plaintiffs Fail to Plausibly Allege that Any Knix Product Contains the Type of Fluorine that Can Potentially Indicate the Presence of PFAS*

Even if Plaintiffs were entitled to an inference that the Knix products they purchased would have tested similarly to those Mamavation supposedly sampled (they are not), Mamavation makes clear that it only tested for *total* fluorine, not *organic* fluorine that can potentially indicate the presence of PFAS.  As Plaintiffs' counsel, Mamavation and the EPA have acknowledged, testing for total fluorine is not sufficient to "indicate the presence of PFAS" because total fluorine includes inorganic fluorides that exist naturally in the environment and are not present in PFAS.

13

*See* Section II.A, *supra*.  Without credible testing for ***organic*** fluorine, Plaintiffs have no plausible basis to allege that any Knix product contains fluorine "indicative of PFAS."

Plaintiffs no doubt will point to their allegation that Knix represented its products to be "fluorine free" (FAC ¶ 27), and argue that statement is misleading regardless of the type of fluorine Mamavation alleges to have found in the products.  But that argument completely ignores the context of the statement.  Even looking at the truncated portion of the blog post Plaintiffs include in the FAC, it is clear that "fluorine free" refers to the fact that Knix's products are free of PFAS and the type of fluorine that can indicate the presence of PFAS, *i.e.*, ***organic*** fluorine:

> There are 9000 different kinds of PFAS, but there aren't tests available for all of them yet. However as a community member gratefully pointed out to us, *all* PFAS contain Fluorine (this is the F in PFAS). What does this mean? If our underwear was free from Fluorine, we'd be free of all PFAS.
>
> Because of this feedback, we sought out extra testing to confirm that there is **no Fluorine in our Leakproof Underwear.**

(*Id.*).  No reasonable consumer would read those paragraphs as a representation that Knix products are free of naturally occurring ***inorganic fluorides***.  Nor do Plaintiffs allege any facts to plausibly suggest that the presence of inorganic fluorides – which are present in drinking water, salt water and dozens of common food items – would impact a reasonable consumer's decision to purchase menstrual underwear (much less that it impacted Plaintiffs' decisions to purchase Knix products).[14]  *See, e.g.*, *Painter v. Blue Diamond Growers*, 757 F. App'x 517, 519 (9th Cir. 2018)

---

[14]  Plaintiffs mischaracterize internet sources to suggest that the presence of fluorine alone is "independently concerning," but those sources refer to solid elemental fluorine – a highly unstable form of pure fluorine that is different from PFAS, inorganic fluoride or any type of fluorine that could conceivably be present in consumer products.  (*See* Rule 11 Mot. at 20-21). Even Mamavation stops short of claiming that the presence of fluorine itself in menstrual underwear is dangerous.  She admits: "we make no claims as to how much fluorine is dangerous vs. safe for dermal exposure in your vaginal area. We simply do not know."  (Ex. 7 at 13).

(affirming dismissal for failure to plausibly allege that a reasonable consumer would be misled); *Puri v. Costco Wholesale Corp.*, No. 5:21-CV-01202-EJD, 2021 WL 6000078, at *6 (N.D. Cal. Dec. 20, 2021) (Davila, J.) ("[A] plaintiff's unreasonable assumptions about a product's label will not suffice to satisfy the reasonable consumer standard.") (quotations omitted).

Indeed, one of the key failings of the FAC is its repeated attempt to conflate fluorine with potentially harmful PFAS.  Even a credible positive organic fluorine test result (a far cry from the Mamavation results Plaintiffs rely on here) would not necessarily indicate that a product contains PFAS, let alone the handful of specific PFAS that scientists and regulators have expressed concerns about from a safety or environmental perspective.  As one court in this circuit recently noted in dismissing PFAS-related consumer protection claims:

> Plaintiff's sole authority for its allegation that "Oral-B Glide dental floss contain[s] ... elevated amounts of PFASs" is the PFASs Study.  But the PFASs Study doesn't adequately support this allegation.  Rather, the PFASs Study "hypothes[ized]" that Defendant's Oral-B Glide might be "a ***potential*** exposure source for PFASs."  And that hypothesis was based on screening Defendant's dental floss for fluorine, which indicates that PFASs ***might*** be present. Indeed, the floss was never tested for PFASs . . . .
>
> But that's not how Plaintiff presents the PFASs Study in the FAC. To the contrary, Plaintiff alleges with total certainty that "consumers [who] utilize ... Oral-B Glide dental floss ***will*** be exposed to elevated amounts of PFASs." . . . Since these allegations clearly overstate the findings of the PFASs Study, Plaintiff fails to adequately allege Defendant's Oral B-Glide contains elevated amounts of PFASs, causing Plaintiff's FAL, CLRA, and UCL claims to fail under Rule 9(b) and Rule 12(b)(6).

*Andrews v. Procter & Gamble Co.*, No. EDCV-19-00075 AG(SHKx), 2019 WL 6520045, at *3 (C.D. Cal. June 3, 2019) (record citations omitted, emphasis in original).  So too here.  Plaintiffs drastically overstate the findings of Mamavation's purported testing, which simply does not support their contention that any Knix product contains "fluorine indicative of PFAS."[15]

---

[15]   Mamavation's report of fluorine test results also do not plausibly support Plaintiffs' claims because she provides no information regarding the testing or sampling conditions or procedures, including what steps (if any) the anonymous lab took to ensure that the results were not impacted by contamination during the testing process.  *See* Rule 11 Mot. at 7, n.10 & 10 (citing sources).

1

**B.**     **Plaintiffs Fail to Plead Their Fraud-Based Claims with Particularity**

2    All of Plaintiffs' claims are subject to the heightened pleading requirements of Rule 9(b),

3 because all are based on an alleged "unified course of fraudulent conduct"; namely, purported

4 misrepresentations regarding the presence of PFAS or "fluorine indicative of PFAS" in Knix

5 products.  Thus, the circumstances of the alleged fraud must be pleaded with particularity for each

6 claim to survive, regardless of whether fraud is an element of each specific cause of action. *Vess*,

7 317 F.3d at 1103-04; *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) ("the

8 pleading . . . as a whole must satisfy the particularity requirement of Rule 9(b)" for CLRA and UCL

9 claims "grounded in fraud"); *Robichaud v. Speedy PC Software,* No. C 12 04730 LB, 2013 WL

10 818503, at *10 (N.D. Cal. Mar. 5, 2013) (claims for violation of the UCL, fraudulent inducement

11 and breach of express warranties must be plead with particularity); *Challenge Printing Co., Inc. v.*

12 *Elecs. for Imaging Inc.*, 500 F. Supp. 3d 952, 958 (N.D. Cal. 2020) (Davila, J.) ("This Court also

13 applies the Rule 9(b) standard to the claim for negligent misrepresentation.").

14    Rule 9(b) requires a Plaintiff asserting fraud-based claims to identify with particularity the

15 specific misrepresentation she relied upon and the particular circumstances surrounding each

16 representation, such as what advertisements or other materials contained the misrepresentations,

17 when she was exposed to those materials, which ones she found material and which ones she relied

18 upon in deciding to purchase the product at issue.  *See Kearns*, 567 F.3d at 1126 (dismissing CLRA

19 and UCL claims where plaintiff "failed to articulate the who, what, when, where, and how of the

20 misconduct alleged"); *Davidson v. Kimberly–Clark Corp.*, No. C 14–1783 PJH, 2014 WL 3919857,

21 at *9 (N.D. Cal. Aug. 8, 2014) ("[T]o maintain a claim under the FAL and CLRA, as well as under

22 any UCL claim premised on fraud or misrepresentation, a plaintiff must plead facts showing that

23 she relied on the defendant's alleged misrepresentation.").  Plaintiffs fail to allege any such details

24 here.  They generally contend that they "viewed the labeling, packaging, and marketing materials

25 of [the] Product, including those set out herein, including that the Product was safe and sustainable,

26 free of fluorine and otherwise PFAS-free."  (FAC ¶¶ 8, 10).  But they do not allege what, if any,

27 specific materials they relied upon in making their purchase.

28    Plaintiffs do identify a handful of specific misrepresentations on Knix's website that they

16

contend are inaccurate – namely, certain PFAS-related representations on the Knix blog post and product pages linking to that blog post.  (FAC ¶¶ 25, 27).[16]  They do not, however, specifically allege which, if any, of these statements they relied upon in deciding to purchase Knix products, much less when they viewed it or how they purportedly relied upon it.  Those details are required by Rule 9(b).[17]  *See Brown v. Madison Reed, Inc.*, No. 21-CV-01233-WHO, 2021 WL 3861457, at *1 (N.D. Cal. Aug. 30, 2021) (dismissing fraud-based claims where plaintiffs generally alleged that they relied on misrepresentations on defendant's website and packaging stating that product was "'Free of ammonia,' 'resorcinol,' and 'PPD'" but "fail[ed] to specifically allege which, if any, of those statements they actually saw and relied upon before deciding to purchase the [defendant's] products"); *Sheahan v. State Farm Gen. Ins. Co.*, 442 F. Supp. 3d 1178, 1186 (N.D. Cal. 2020) (dismissing fraud-based claims due to lack of "allegation that Plaintiffs read the statement on [defendant's] website . . . that amounts to an affirmative misrepresentation"); *In re Arris Cable Modem Consumer Litig.*, No. 17-CV-01834-LHK, 2018 WL 288085, at *8 (N.D. Cal. Jan. 4, 2018) ("[A] plaintiff does not satisfy Rule 9(b) when the plaintiff generally identifies allegedly misleading statements but fails to specify which statements the plaintiff actually saw and relied upon.").

### C.   <u>Several of Plaintiffs' Claims Fail for Additional, Independent Reasons</u>

#### 1)  *Plaintiffs' Negligent Failure-to-Warn Claim (Count XV) Fails Because They Do Not Plausibly Allege a Safety Risk or any Duty to Disclose*

Even if Plaintiffs could credibly allege that Knix products contain "fluorine indicative of PFAS," they have not plausibly alleged that the presence of fluorine in menstrual underwear

---

[16]  Plaintiffs also generically claim that Knix's "labeling," "packaging" and other unidentified "marketing materials" contain misrepresentations (*e.g.*, FAC ¶¶ 8, 10, 71, 74), but they do not (and cannot) actually identify any specific PFAS- or fluorine-related statement on any such materials.

[17]  Those details also are particularly important here given the timing of Plaintiffs' purchases and the specific alleged misrepresentations at issue.  Plaintiff Franz, for example, claims to have purchased a Knix product in May 2021.  (FAC ¶ 10).  But the only fluorine-related representation Plaintiffs identify in the FAC was added to the blog post in June 2021.  (*See* Ex. 6).  Thus, Plaintiff Franz cannot possibly have seen or relied upon that representation in making her purchase.

creates a safety risk, much less one that Knix was aware of or had a duty to warn consumers about.  A negligent failure to warn claim "requires a plaintiff to [allege] that a manufacturer or distributor did not warn of a particular risk for reasons which fell below the acceptable standard of care, *i.e.*, what a reasonably prudent manufacturer would have known and warned about." *Mariscal v. Graco, Inc.*, 52 F. Supp. 3d 973, 991-92 (N.D. Cal. 2014) (citing *Anderson v. Owens– Corning Fiberglas Corp.*, 53 Cal.3d 987, 1002 (1991)).  Plaintiffs do not and cannot identify any standard that requires a manufacturer to disclose the ingredients of either menstrual hygiene or apparel products, much less any standard that requires warning of the presence of fluorine in such products.  Nor do they plausibly allege that the presence of fluorine in a product alone creates any safety risk to consumers (notwithstanding their mischaracterization of various sources discussing solid elemental fluorine, *see* Rule 11 Mot. at 20-22).  Nor do they allege – beyond conclusory statements – that Knix was aware of the supposed presence of fluorine in its products or any purported safety risk that could pose to its customers.

While Plaintiffs point to a handful of studies that have associated potential health risks with exposure to certain levels of certain PFAS, Plaintiffs have not even directly alleged that any Knix product contains PFAS, let alone any specific PFAS at any specific level.  Even if Plaintiffs had directly alleged that Knix products contain PFAS, those allegations would not be sufficient to support a failure-to-warn claim.  In *Kanan v. Thinx*, a court in this circuit dismissed a failure-to-warn claim against Knix's competitor, Thinx, for selling menstrual underwear that allegedly contains PFAS.  Unlike here, the plaintiffs' counsel in *Kanan* conducted independent testing for PFAS directly – they did not rely on anonymous total fluorine testing reported by internet bloggers – and alleged that they found more than trace amounts of certain PFAS in the specific products that the plaintiffs purchased.  Nevertheless, the court dismissed their failure to warn claim:

> The Court disagrees with Plaintiffs that their allegations sufficiently state a claim for relief under a theory of negligent failure to warn.  Plaintiffs have acknowledged that the FDA does not require the disclosure of individual ingredients in menstrual hygiene products.  What is more, Plaintiffs have failed to plead that the products in question contain short-chain PFAS of a type and at a level that poses a risk of harm . . . , meaning that they have not pled a danger of which Thinx was allegedly aware of and of which it failed to warn.

*Kanan v. Thinx Inc.*, No. CV 20-10341 JVS (JRPx), 2021 WL 4464200, at *8 (C.D. Cal. June 23, 2021) (record citation omitted).  Plaintiffs here have alleged far less.[18]

### 2) *Plaintiffs' Negligence-Based Claims (Counts XI and XV) Are Barred by the Economic Loss Doctrine*

The economic loss doctrine bars Plaintiffs' negligent misrepresentation and negligent failure to warn claims because neither Plaintiff alleges that she suffered any health effects or other non-economic injury as a result of using the product.  "[N]on-economic loss is a required element of a negligence cause of action alleged in a sale of goods case, and thus non-economic loss must be pleaded to survive a motion to dismiss."  *Ladore v. Sony Computer Ent. Am., LLC*, 75 F. Supp. 3d 1065, 1075–76 (N.D. Cal. 2014) (dismissing negligent misrepresentation claim in consumer class action where plaintiffs did not allege physical harm); *see also Young v. Cree, Inc.*, No. 17-CV-06252-YGR, 2018 WL 1710181, at *8 (N.D. Cal. Apr. 9, 2018) (same); *Snyder v. TAMKO Bldg. Prod., Inc.*, No. 1:15-CV-01892-TLN-KJN, 2019 WL 4747950, at *9 (E.D. Cal. Sept. 30, 2019) (economic loss rule bars claim for negligent failure to warn).  Plaintiffs do not plead that they suffered physical harm – their only alleged injury is economic.  (FAC ¶¶ 77, 206, 242).[19]

---

[18]  *Kanan* declined to dismiss consumer protection and express warranty claims, but the allegations in that case are a far cry from those here.  Among other things, the *Kanan* plaintiffs conducted independent testing and found PFAS (not just total fluorine) in Thinx's product.  *Id.* at *1.

[19]  Plaintiffs include a request for "medical monitoring" in their "Prayer for Relief," but the FAC falls far short of the standard for pleading a medical monitoring claim.  Medical monitoring requires a plaintiff to plead actual and significant exposure to a toxic chemical that places the plaintiff at a significantly increased risk of a specific disease (including the relative increase in the risk of developing the disease compared to the public at large).  *See Riva v. Pepsico, Inc.*, 82 F. Supp. 3d 1045, 1057, 1064 (N.D. Cal. 2015) (dismissing medical monitoring claim).  Plaintiffs do not even allege that they wore the underwear they purchased, much less that it actually exposed them to any particular PFAS in amounts that have been associated with increased health risks.  Nor do they identify any specific medical condition for which they seek monitoring, or plead facts to suggest

### 3) Plaintiffs' Implied Warranty Claim (Count III) Fails

Plaintiffs' implied warranty claims under the UCC and the Song-Beverly Act must be dismissed because they fail to allege – beyond conclusory statements – that the Knix products they purchased are unfit for their ordinary intended purpose or that they purchased the product for some other particular purpose in reliance on Knix's skill or judgment.  The implied warranty of merchantability requires that goods are "fit for the ordinary purposes for which such goods are used."  Cal. Com. Code § 2314; *see also Isip v. Mercedes-Benz USA, LLC*, 155 Cal. App. 4th 19, 26-27 (2007).  It "provides for a minimum level of quality," and a breach occurs only if the product lacks "even the most basic degree of fitness for ordinary use."  *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 (9th Cir. 2009) (quotations omitted).  The ordinary use of Knix's menstrual underwear products is just that – a menstrual solution.  Plaintiffs do not allege that Knix's products failed in that purpose, nor do they explain how their allegation that the products contain "fluorine indicative of PFAS" renders them unfit for that function.

The implied warranty for a particular purpose only applies where a seller has reason to know that a buyer wishes to purchase goods for some particular purpose other than their ordinary purpose, and where the buyer relies on the seller to select a product for that purpose.  Plaintiffs do not allege that they purchased Knix products for any purpose other than their ordinary use, *i.e.*, as menstrual underwear.  *See e.g.*, *Smith v. LG Elecs. U.S.A., Inc.*, No. C 13-4361 PJH, 2014 WL 989742, at *8 (N.D. Cal. Mar. 11, 2014) (dismissing implied warranty claim because "plaintiff has identified no 'particular purpose' for which she purchased the washing machine. She purchased it to wash her laundry, which is the 'ordinary' purpose of a washing machine.");  *Kanan*, 2021 WL 4464200, at *7-8 (dismissing implied warranty claims where plaintiffs failed to allege that the product was unfit for ordinary use or that they purchased it for a particular use).

### 4) Plaintiffs' Magnuson-Moss Claim (Count XIV) Fails to Name 100 Plaintiffs and Is Derivative of Their Warranty Claims

Plaintiff's Magnuson-Moss Warranty Act ("MMWA") claim fails because the FAC does

_____

that they are at a significantly increased risk of any such condition.  *Id.* at 1061-62.

not name 100 plaintiffs. As the Ninth Circuit explained, "[t]he text [of the statute] is clear that a requirement for an MMWA class action in federal court is at least one hundred named plaintiffs." *Floyd v. Am. Honda Motor Co.*, 966 F.3d 1027, 1034 (9th Cir. 2020) (affirming dismissal because "Plaintiffs name only three individuals"); *see also Buckley v. Align Tech., Inc.*, No. 5:13-CV-02812-EJD, 2014 WL 3778921, at *3 (N.D. Cal. July 31, 2014) (Davila, J.) ("[T]he Court finds that it lacks jurisdiction to hear Plaintiff's MMWA claim because there are not one hundred named plaintiffs in the FAC . . . .").[20] Here the FAC only names two plaintiffs. The MMWA claim fails.

The MMWA claim also fails because Plaintiff's warranty claims fail. *See Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1227 (9th Cir. 2015) ("Claims under the [MMWA] 'stand or fall with . . . express and implied warranty claims under state law.'"). Further, to the extent the MMWA claim is premised on express warranty, it fails because "product descriptions" and "statements merely describing the materials contained in a product" are not considered "written warranties" under the Act. *Perez v. Monster Inc.*, 149 F. Supp. 3d 1176, 1183 (N.D. Cal. 2016) (quotations omitted).

### 5) *Plaintiffs' Money Had and Received and Unjust Enrichment Claims (Counts VIII and XII) Are Superfluous*

Plaintiffs' claims for money had and received and unjust enrichment should be dismissed because they are entirely duplicative of their consumer protection and warranty claims. Plaintiffs do not identify any basis for their money had and received claim other than Knix's representations regarding the absence of fluorine and PFAS from its products, and their unjust enrichment claim makes clear that it is premised on Knix's purported "fail[ure] to disclose that the Products were unfit for their intended purpose." (FAC ¶¶ 178, 211). And, Plaintiffs are seeking the exact same relief – restitution of the purchase price they paid for Knix products – that they are seeking under her CLRA and UCL Claims. (*Id.* at ¶¶ 179, 212). Courts in this district regularly dismiss claims

---

[20]  Prior to *Floyd*, some courts found naming 100 plaintiffs "unnecessary if plaintiffs otherwise properly invoke jurisdiction under the Class Action Fairness Act ('CAFA')." *Buckley*, 2014 WL 3778921, at *3. Plaintiffs attempt to do so here, but *Floyd* made clear that "CAFA may not be used to evade or override the MMWA's specific numerosity requirement." *Floyd*, 966 F.3d at 1035.

21

for unjust enrichment and money had and received in similar circumstances.  *See, e.g.*, *Samet v. Procter & Gamble Co.*, No. 5:12-CV-01891 PSG, 2013 WL 3124647, at *10 (N.D. Cal. June 18, 2013) (dismissing claim for unjust enrichment because the "complaint allege[d] no facts not already covered by the UCL, FAL, and CLRA claims, which already provide for restitution as a remedy"); *Rojas v. Gen. Mills, Inc.*, No. 12-CV-05099-WHO, 2013 WL 5568389, at *7 (N.D. Cal. Oct. 9, 2013) (dismissing claim for money had and received that "'is simply a reformulation of plaintiff's UCL, FAL, and CLRA claims.'") (citation omitted); *In re Apple & AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011); *cf. Dunkel v. eBay Inc.*, No. 5:12-CV-01452-EJD, 2014 WL 1117886, at *7 (N.D. Cal. Mar. 19, 2014) (Davila, J.) ("California courts have held that when a common count is used as an alternative claim seeking the same recovery demanded in a specific cause of action based on the same facts, the common count may be dismissed if the cause of action is dismissed").  The Court should do the same here.

### D.  The Court Should Dismiss or Strike Plaintiffs' Nationwide Class Allegations

If the Court does not dismiss the case in full, it should at least dismiss or strike Plaintiffs' nationwide class allegations.  Plaintiffs purport to assert claims on behalf of a nationwide class of "all persons in the United States who purchased the Product." (FAC ¶ 89).  But this Court lacks specific jurisdiction over Knix for claims based on sales outside of California, California law does not apply to the claims of non-residents that have no nexus to California and Plaintiffs lack standing to assert claims on behalf of non-California residents under other states' laws.

#### 1)  *The Court Lacks Specific Jurisdiction With Respect to Claims by Non-California Residents*

Plaintiffs' nationwide class allegations should be stricken because, under the Supreme Court's holding in *Bristol-Myers*, the Court lacks personal jurisdiction over Knix with respect to claims based on sales made outside of California.[21]  In *Bristol-Myers*, more than 600 plaintiffs,

---

[21]  The Ninth Circuit has held that lack of personal jurisdiction under *Bristol-Myers* is not an available Rule 12(b) defense because putative class members do not become parties until after a class is certified. *See Moser v. Benefytt, Inc.*, 8 F.4th 872, 877 (9th Cir. 2021).  However, the court

most of whom were not California residents, filed a mass action in California alleging claims based on injuries caused by the drug Plavix. *Bristol-Myers Squibb Co. v. Super. Ct.*, 137 S. Ct. 1773, 1777 (2017). The California Supreme Court found jurisdiction proper "because the claims of the nonresidents were similar in several ways to the claims of the California residents . . . ." *Id.* at 1779 (citation omitted).  The United States Supreme Court reversed, noting that "the nonresidents were not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California. The mere fact that other plaintiffs were prescribed, obtained, and ingested Plavix in California—and allegedly sustained the same injuries as did the nonresidents—does not allow the State to assert specific jurisdiction over the nonresidents' claims." *Id.* at 1776. The majority opinion, however, did not address whether this ruling would apply to a class action in which a forum-state plaintiff seeks to represent a nationwide class of plaintiffs injured elsewhere.  *See id.* at 1789, n.4 (Sotomayor, J., dissenting).  The Ninth Circuit has not definitively addressed that issue, but several district courts have held that it does. *See Carpenter v. PetSmart, Inc.*, 441 F. Supp. 3d 1028, 1035 (S.D. Cal. 2020) (citing cases).

  *Carpenter* is directly on point – it involved an attempt by a California plaintiff to assert claims under California consumer protection laws on behalf of a nationwide class of purchasers of a non-resident defendant's products based on sales outside of California. *Carpenter*, 441 F.Supp.3d at 1031.  As the court explained in applying *Bristol-Myers* to strike the nationwide class allegations:

> The primary concern in determining whether personal jurisdiction is present, therefore, is "the burden on the defendant." *Bristol-Myers*, 137 S. Ct. at 1780. This burden "encompasses the more abstract matter of submitting to the coercive power of a State that may have little legitimate interest in *the claims in question.*" *Id.* at 1780 (emphasis added). The "claims in question" in this motion are those related to purchases of [products] that occurred outside of California. California has little interest in the claims of non-California plaintiffs arising out purchases made outside California from a Delaware company with a principal place of business in Arizona. Further, the burden on PetSmart to defend a nationwide class action is significantly greater than the burden of defending an individual claim or a statewide class action. That PetSmart sold some [products] in California does not create a sufficient relationship between PetSmart and California such that it should be subject to

---

noted that the defendant "could have moved to strike [plaintiff's] class allegations under Rule 12(f) or Rule 23 based on [plaintiff] seeking to represent non-California residents."  *Id.* at 878 n.2.

1
2

specific personal jurisdiction in California for the claims of a nationwide class with no connection to California.

3   *Carpenter*, 441 F.Supp.3d at 1035-36.  *Carpenter* considered and rejected the primary argument

4   raised by courts that have declined to apply *Bristol-Myers* to class actions – that procedural

5   safeguards of Rule 23 are sufficient to address any due process concerns.  As the court explained,

6   those safeguards were designed to protect absent class members, not the due process rights of

7   defendants.  *Id.* at 1036-37; *see also In re Dental Supplies Antitrust Litig.*, No. 16 Civ. 696 (BMC)

8   (GRB), 2017 WL 4217115, at *9 (E.D.N.Y. Sept. 20, 2017) ("The constitutional requirements of

9   due process do[ ] not wax and wane when the complaint is individual or on behalf of a class.").

10   Knix is a foreign corporation located in Canada.  (FAC ¶ 12).  Plaintiffs allege that Knix

11   transacted business in California and has purposefully availed itself of California laws.  (*Id.* at ¶

12   14). But, like in *Carpenter*, those facts do not justify subjecting Knix to the burden of defending a

13   nationwide class action in California based on claims that have nothing to do with California.

14   **2)  *Non-Residents Cannot Assert Claims Against Knix under California Law for Conduct Occurring Outside of California***

15

16   Even if the Court could exercise jurisdiction over the claims of non-resident class members,

17   Plaintiffs' nationwide class allegations must be dismissed because California laws do not apply

18   extraterritorially to claims that have no nexus to California.  Plaintiffs appear to limit their UCL,

19   CLRA, Song-Beverly Consumer Warranty Act, and FAL claims to the so-called California

20   subclass.[22]  But they assert their other claims – including express warranty claims, fraud-based

21   claims, negligence claims and unjust enrichment claims – on behalf of all consumers nationwide.

22   Plaintiffs' attempt to assert those claims on behalf of a nationwide class fails because there

23

24   [22]  Those statutes do not apply to transactions outside of California, at least where the alleged

25   deceptive conduct underlying the claims does not originate in California.  *See Wilson v. Frito-Lay*

26   *N. Am., Inc.*, 961 F. Supp. 2d 1134, 1147 (N.D. Cal. 2013); *Beyer v. Symantec Corporation* 333 F.

27   Supp. 3d 966, 981-982 (N.D. Cal. 2018); *Lejbm v. Transnat'l Foods, Inc.*, No. 17-CV-1317-CAB-

28   MDD, 2018 WL 1258256, at *5 (S.D. Cal. Mar. 12, 2018).

24

are material distinctions between California's laws and other state's laws.  *See e.g.*, *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 590-91 (9th Cir. 2012) (discussing material differences among state consumer protection and unjust enrichment laws); *Young v. Neurobrands, LLC*, No. 18-CV-05907-JSW, 2020 WL 11762212, at *9 (N.D. Cal. Oct. 15, 2020) (declining to certify class due to material differences among common law fraud, negligent misrepresentation, and breach of express warranty laws); *Darisse v. Nest Labs, Inc.*, No. 5:14-cv-1363-BLF, 2016 WL 4385849, at *11, 13-14 (N.D. Cal. Aug. 15, 2016).  Courts have not hesitated to dismiss such claims at the pleading stage, particularly where plaintiffs fail to "identify and plead the elements" of their claims "for each state." *Los Gatos Mercantile, Inc v. E.I. DuPont De Nemours & Co.*, No. 13-CV-01180-BLF, 2014 WL 4774611, at *11 (N.D. Cal. Sept. 22, 2014); *see also Pistacchio v. Apple Inc.*, No. 4:20-CV-07034-YGR, 2021 WL 949422, at *3 (N.D. Cal. Mar. 11, 2021).  The Court should do the same.

### 3) *Plaintiffs Lack Standing to Assert Claims on Behalf of Non-California Residents under Other States' Laws*

Plaintiffs also lack standing to assert claims under other states' laws.  Article III standing is "claim-specific and a plaintiff must demonstrate standing for each claim he seeks to press." *Carpenter*, 441 F. Supp. 3d at 1038 (quotations omitted).  For this reason, "[c]ourts routinely dismiss claims . . . where no plaintiff is alleged to reside in a state whose laws the class seeks to enforce because the named plaintiff lacks standing to invoke the foreign statute." *Id.* (quotations omitted); *see also Mollicone v. Universal Handicraft, Inc.*, No. 2:16-cv-07322-CAS (MRWx), 2017 WL 440257, at *9-10 (C.D. Cal. Jan. 30, 2017) ("[T]he majority of courts to consider this question have concluded that when 'a representative plaintiff is lacking for a particular state, all claims based on that state's laws are subject to dismissal.'"); *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1107 (N.D. Cal. 2007).  Plaintiffs reside and made their purchases in California. (FAC at ¶¶ 8-12, 14). They lack standing to assert claims under any other state's law, and the "nationwide class" label "does not overcome this deficiency." *Carpenter*, 441 F. Supp. 3d at 1038.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss the FAC in its entirety with prejudice or, in the alternative, dismiss or strike Plaintiffs' nationwide class allegations.

1   Date:  June 10, 2022                          HOGAN LOVELLS US LLP

2

3                                            By: */s/ Michael M. Maddigan*

4                                                Michael M. Maddigan (Bar No. 163450)
                                                 Attorney for Defendant
5                                                KNIX WEAR INC.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28