**BURSOR & FISHER, P.A.**
Sean L. Litteral (State Bar No. 331985)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: slitteral@buror.com

**BURSOR & FISHER, P.A.**
Rachel L. Miller (*pro hac vice* forthcoming)
701 Brickell Ave., Suite 1420
Miami, FL 33131
Tel: (305) 330-5512
Facsimile: (305) 676-9006
E-mail: rmiller@bursor.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEMMA RIVERA and MARISA FRANZ, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KNIX WEAR INC.,<br><br>Defendant. | Case No.5:22-cv-02137-EJD<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR RULE 11 SANCTIONS**<br><br>Date:   November 10, 2022<br>Time:  9:00 a.m.<br>Dept.:  Courtroom 4<br>Judge:  Honorable Edward J. Davila |

# TABLE OF CONTENTS

**PAGE(S)**

I.      INTRODUCTION ...................................................................................................1

II.     LEGAL STANDARD ............................................................................................2

III.    ARGUMENT .........................................................................................................3

    A.      The Court Should Reject Defendant's Blatant Misuse of Rule 11............................3

    B.      Defendant's Aspersions are Inappropriate and Irrelevant. ........................................5

    C.      Defendant's Motion Fails as a Matter of Law.............................................................6

    D.      The FAC is Not Baseless From an Objective Perspective, and Defendant Makes No Showing to Prove Otherwise.......................................7

    E.      Plaintiffs' Counsel Conducted a Reasonable and Competent Inquiry. .....................8

        1.      Defendant Purports to Challenge the Reasonableness of the Investigation but Instead Seeks to Further its Position on the Merits.....................................................................................................10

        2.      Defendant's Cases are Wholly Inapposite...............................................14

    F.      The Court In Its Own Discretion May Impose Sanctions Against Defendant. ...........................................................................................................18

III.    CONCLUSION ...................................................................................................19

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Adams v. Kraft*,
2010 WL 4941432 (N.D. Cal. Nov. 30, 2010) ............................................................... 5

*Attia v. Google LLC*,
2018 WL 2971049 (N.D. Cal. June 13, 2018).............................................................. 16

*Benedict v. Hewlett-Packard Co.*,
2014 WL 234207 (N.D. Cal. Jan. 21, 2014)........................................................... passim

*Berke v. Whole Foods Mkt., Inc.*,
2020 WL 5802370 (C.D. Cal. Sept. 18, 2020) ......................................................... 4, 12

*Big Baboon, Inc. v. SAP Am., Inc.*,
2018 WL 1400443 (N.D. Cal. Mar. 20, 2018) ............................................................. 5

*California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics, Inc.*,
818 F.2d 1466 (9th Cir. 1987)....................................................................................... 8

*D'Lil v. Best W. Encina Lodge & Suites*,
538 F.3d 1031 (9th Cir. 2008)....................................................................................... 6

*Gaiardo v. Ethyl Corp.*,
835 F.2d 479 (3d Cir. 1987) ........................................................................................ 19

*Greenberg v. Sala*,
822 F.2d 882 (9th Cir. 1987) ........................................................................................ 2

*Holgate v. Baldwin*,
425 F.3d 671 (9th Cir. 2005) ........................................................................................ 2

*Ideal Instruments, Inc. v. Rivard Instruments, Inc.*,
243 F.R.D. 322 (N.D. Iowa 2007) .............................................................................. 18

*In re Australia & New Zealand Banking Grp. Ltd. Sec. Litig.*,
712 F. Supp. 2d 255 (S.D.N.Y. 2010) ........................................................................ 16

*In re Connetics Corp. Sec. Litig.*,
542 F. Supp. 2d 996 (N.D. Cal. 2008)........................................................................ 16

*In re Crystal Cathedral Ministries*,
2020 WL 1649619 (Bankr. C.D. Cal. Mar. 31, 2020)............................................. 7, 19

*In re Keegan Mgmt. Co., Sec. Litig.*,
78 F.3d 431 (9th Cir. 1996) ....................................................................................... 2, 3

*Mancuso v. RFA Brands, LLC*,
    454 F. Supp. 3d 197 (W.D.N.Y. 2020)........................................................................ 11

*Mey v. Medguard Alert, Inc.*,
    2020 WL 1258639 (N.D.W. Va. Mar. 16, 2020) ........................................................ 15

*Mortg. Elec. Registration Sys., Inc. v. Koeppel*,
    2019 WL 2568860 (N.D. Cal. June 21, 2019)............................................................... 5

*Operating Engineers Pension Tr. v. A-C Co.*,
    859 F.2d 1336 (9th Cir. 1988)................................................................................. 2, 9

*O'Rourke v. Dominion Voting Sys. Inc.*,
    2021 WL 3400671 (D. Colo. Aug. 3, 2021) ............................................................... 16

*Rich v. Taser Int'l, Inc.*,
    2012 WL 3155137 (D. Nev. Aug. 2, 2012) ................................................................ 19

*Rodriguez v. Int'l Bhd. of Boilermakers*,
    2016 WL 913440 (N.D. Cal. Mar. 10, 2016) ........................................................... 7, 8

*Safe-Strap Co. v. Koala Corp.*,
    270 F. Supp. 2d 407 (S.D.N.Y. 2003) ..................................................................... 3, 4

*Sciortino v. Pepsico, Inc.*,
    108 F. Supp. 3d 780 (N.D. Cal. 2015)....................................................................... 10

*Scott v. Vantage Corp.*,
    2021 WL 3145223 (D. Del. July 25, 2021) ............................................................... 16

*Stevens v. Britax Child Safety, Inc.*,
    2021 WL 4706702 (C.D. Cal. July 13, 2021) ....................................................... 12, 18

*Stiglich v. Contra Costa Cty. Bd. of Supervisors*,
    1997 WL 22410 (9th Cir. 1997) ................................................................................. 8

*Syneron Med. Ltd. v. Viora Ltd.*,
    2014 WL 7140643 (E.D. Tex. Dec. 12, 2014) ........................................................... 18

*Uniloc United States of Am., Inc. v. Apple Inc.*,
    2018 WL 2392561 (N.D. Cal. May 25, 2018).......................................................... 2, 3

*United States v. Stringfellow*,
    911 F.2d 225 (9th Cir. 1990) ...................................................................................... 7

*Urenia v. Pub. Storage*,
    2015 WL 3378247 (C.D. Cal. May 7, 2015) ........................................................ 15, 16

*Veal v. LendingClub Corp.*,
    423 F. Supp. 3d 785 (N.D. Cal. 2019) ....................................................................... 16

*Walker v. S.W.I.F.T. SCRL*,
  517 F. Supp. 2d 801 (E.D. Va. 2007) .................................................................... 14, 15

*Woodrum v. Woodward Cty., Okla.*,
  866 F.2d 1121 (9th Cir. 1989) .................................................................................... 8

*Zeiger v. WellPet LLC*,
  304 F. Supp. 3d 837 (N.D. Cal. 2018).............................................................. 11, 12

**RULES**

Fed. R. Civ. P. 11 ........................................................................................... passim

Fed. R. Civ. P. 11(b)(2) ............................................................................................. 7

Fed. R. Civ. P. 11(c)(2) ................................................................................... 19, 20

## I.   INTRODUCTION

Plaintiffs' First Amended Complaint ("FAC") presents a straightforward question for the jury:  would a reasonable consumer find Defendant's representations that its products are "[f]luorine-free" and "[f]ree from PFAS and other toxic chemicals" misleading?  Plaintiffs' theory of the case and supporting allegations plausibly show that Defendant makes material misrepresentations.  But, as expected, Defendant contests the allegations against it.  In doing so, however, Defendant throws everything at the wall, and uses a Rule 11 motion to raise arguments suited for a motion to dismiss or motion for summary judgment, and to cast aspersions against Plaintiffs' counsel and a respected consumer health activist.

Despite the fact that Rule 11 presents an extraordinary remedy for exceptional circumstances, Defendant makes no serious effort to meet its heavy burden to show that sanctions are warranted. Defendant fails to even address the relevant legal standard, much less prove by clear and convincing evidence that any circumstances here warrant sanctions under the Ninth Circuit test.  Defendant simply does not raise a viable theory to challenge the filing of a complaint.  First, Defendant does not argue that Plaintiffs filed suit for an improper purpose, and for good reason, as they did not. Second, although Defendant claims Plaintiffs filed the FAC without conducting a reasonable and competent inquiry, even Defendant does not go so far to argue that the FAC is baseless from an objective perspective.  Defendant's half-hearted challenge is thus deficient as a matter of law. Defendant's supporting cases are no more help, as they are either inapposite or grossly mischaracterized—including Defendant's key supporting case, which, contrary to Defendant's false assertion, involved no imposition of sanctions.  And Defendant's repeated assertions that Plaintiffs' counsel did not conduct a reasonable inquiry—and that only *its* own evidence is credible—does not make it so.

Stripped of its ill-suited arguments, its inapposite cases, and its numerous invectives, Defendant's motion falls flat and raises a serious question whether it was filed with an improper purpose.  Defendant's motion amounts to, at best, aggressive yet unsupported advocacy resulting in a frivolous motion, and at worst, a transparent bullying tactic.  The Court should deny the motion, and in its own discretion, assess whether sanctions against Defendant or its counsel are warranted.

1    Additionally, Plaintiffs respectfully request reasonable expenses, including attorneys' fees incurred
2    in opposing the motion pursuant to Rule 11(c)(2).

3    ## II.    LEGAL STANDARD

4        "Rule 11 is an extraordinary remedy, one to be exercised with extreme caution." *Operating*
5    *Engineers Pension Tr. v. A-C Co.*, 859 F.2d 1336, 1345 (9th Cir. 1988).   Rule 11 sanctions are
6    reserved "for the rare and exceptional case where the action is clearly frivolous, legally unreasonable
7    or without legal foundation, or brought for an improper purpose." *Id.* at 1344.   "Rule 11 must not be
8    construed so as to conflict with the primary duty of an attorney to represent his or her client
9    zealously." *Id.*

10       "The Ninth Circuit has identified two circumstances where Rule 11 sanctions may be
11   imposed: where a litigant makes a 'frivolous filing,' that is where he files a pleading or other paper
12   which no competent attorney could believe was well-grounded in fact and warranted by law, and
13   where a litigant files a pleading or paper for an 'improper purpose,' such as personal or economic
14   harassment." *Benedict v. Hewlett-Packard Co.*, 2014 WL 234207, at *4 (N.D. Cal. Jan. 21, 2014)
15   (citing *Greenberg v. Sala*, 822 F.2d 882, 885 (9th Cir. 1987)).[1]

16       "[W]hen a complaint is challenged under Rule 11, a district court must conduct a two-prong
17   inquiry to determine whether the complaint is frivolous: '(1) whether the complaint is legally or
18   factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable
19   and competent inquiry before signing and filing it.'"  *Id.* (citing *Holgate v. Baldwin*, 425 F.3d 671,
20   676 (9th Cir. 2005).   "The 'baseless' and 'reasonable inquiry' requirements are conjunctive, not
21   disjunctive." *Id.*  Accordingly, "[a]n attorney may not be sanctioned for a complaint that is not well-
22   founded, so long as she conducted a reasonable inquiry," nor may "she be sanctioned for a complaint
23   which is well-founded, solely because she failed to conduct a reasonable inquiry.'"
24   *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 434 (9th Cir. 1996); *Uniloc United States of Am.,*
25   *Inc. v. Apple Inc.*, 2018 WL 2392561, at *2 (N.D. Cal. May 25, 2018) (same).   "Under that test, the

---

27   [1] Although Defendant does not argue that the FAC was filed for an improper purpose, because the
28   complaint is non-frivolous, it "cannot be said to be filed for an improper purpose." *See Benedict*,
     2014 WL 234207, at *4 (citing *Greenberg*, 822 F.2d at 885–86).

district court must 'consider after-acquired factual evidence that would have adequately supported the complaint' when determining whether sanctions are appropriate under Rule 11." *Uniloc*, 2018 WL 2392561, at *2 (citing *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d at 434); *Benedict*, 2014 WL 234207, at *5 (same).

### III. ARGUMENT

#### A. The Court Should Reject Defendant's Blatant Misuse of Rule 11.

"A Rule 11 violation is [] a serious thing, and an accusation of such wrongdoing is equally serious." *Safe-Strap Co. v. Koala Corp.*, 270 F. Supp. 2d 407, 421 (S.D.N.Y. 2003) (internal quotations and citation omitted). A Rule 11 motion is not to be waved around cavalierly for more reasons than one. Plaintiffs' counsel do not take these allegations lightly and, in representing their clients zealously, have consistently engaged with Defendant in good faith. Plaintiffs' counsel carefully reviewed Defendant's letters, and though Plaintiffs believed the complaint would pass muster as alleged, Plaintiffs amended the complaint to further strengthen the allegations. Defendant maintained that the FAC contained deficiencies, but Plaintiffs respectfully disagreed. Though disagreement over allegations and legal arguments does not rise to sanctionable conduct, Defendant nonetheless continued to threaten a Rule 11 motion and filed the present motion after Plaintiffs' counsel reviewed the motion and agreed to waive service.

Defendant's motion fails on multiple fronts. Superficially, Defendant centers its motion on the allegation that counsel lacked a sufficient investigation (a contention Plaintiffs' counsel denies). But it is entirely unclear whether Defendant's counsel researched the parameters of a Rule 11 motion for at least two reasons. First, as described in detail further below, Defendant does not put forth even a conclusory allegation concerning the second requirement to show frivolousness. Second, it is readily evident that Defendant uses its motion for heavy-handed, improper purposes outside the scope of Rule 11. Specifically, Rule 11 motions "should not be employed as a discovery device or to test the legal sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes." Fed. R. Civ. P. 11 Notes of Advisory Committee on Rules (1993). "Nor should Rule 11 motions be prepared to emphasize the merits of a party's position, . . . to intimidate an adversary into withdrawing contentions that are fairly debatable, to increase the costs of litigation,

to create a conflict of interest between attorney and client, or to seek disclosure of matters otherwise protected by the attorney-client privilege or the work-product doctrine." *Id.* Just short of intimidating Plaintiffs into withdrawing their allegations, Defendant's briefing takes the cake for its improper uses.

Most glaringly, Defendant's motion is replete with arguments on the merits, and Defendant asks the Court to accept only its version of the facts without any support in law. To that end, Defendant's motion is fundamentally at odds with the parameters of a Rule 11 motion: "In determining whether Rule 11 sanctions should be imposed, the Court must not judge the merits of the action, but rather, determine whether an attorney has abused the judicial process." *Benedict*, 2014 WL 234207, at *8 n.7. The Court need look no further than Defendant's contemporaneously filed motion to dismiss, which references the same arguments, such that the Rule 11 motion serves as an inappropriate supplement to its motion to dismiss.[2]

To take an example, Defendant makes much of its own testing and its denial of liability. But Defendant's proffer of its own testing and its denials of liability do not require Plaintiffs to withdraw their complaint. Defendant cites to no case to support such a convenient, draconian position. To the contrary, Defendant's "denials alone do not provide a basis to sanction" counsel "because when presented with some evidence contrary to their claim, [Plaintiffs], like all litigants, had the right to decide whether to dismiss the action or proceed with discovery." *Benedict*, 2014 WL 234207, at *8; *see also Berke v. Whole Foods Mkt., Inc.*, 2020 WL 5802370, at *1 (C.D. Cal. Sept. 18, 2020) (denying motion to dismiss in consumer class action alleging third-party tests showed high levels of arsenic, even where defendants' tests showed different results). "Rule 11 cannot possibly require that an attorney accept as true the uncorroborated denials of an adversary because that would violate the Ninth Circuit's unambiguous holding that 'Rule 11 must not be construed so as to conflict with the primary duty of an attorney to represent his or her client zealously.'" *Benedict*, 2014 WL 234207, at *8 (citation omitted). Defendant is free to dispute Plaintiffs' well-founded allegations and present

---

[2] Such misuse also contravenes the page limits set by Civil Local Rule 7-2(b).

its own evidence at a later stage, but the Court should reject Defendant's efforts to substitute its Rule 11 motion for a motion to dismiss and motion for summary judgment.

Defendant's flagrant misuses of Rule 11 render its motion entirely deficient.   Because Defendant's motion is replete with arguments that are inappropriate for a Rule 11 motion, the Court should deny it.[3]   *See Mortg. Elec. Registration Sys., Inc. v. Koeppel*, 2019 WL 2568860, at *5 (N.D. Cal. June 21, 2019) (Davila, J.) (denying motion for sanctions because "[r]uling on th[e] motion would require the Court to decide factual questions without a developed factual record"); *Adams v. Kraft*, 2010 WL 4941432, at *3 (N.D. Cal. Nov. 30, 2010) (Koh, J.) ("Thus, the Court finds that the actions of Plaintiff and his counsel do not merit the heavy hammer of sanctions. Rather, the potential deficiencies highlighted by Defendants are more appropriately raised in a motion to dismiss."); *Big Baboon, Inc. v. SAP Am., Inc.*, 2018 WL 1400443, at *4 (N.D. Cal. Mar. 20, 2018) (Gilliam, J.) (denying defendants' motion for sanctions challenging the filing of a purportedly baseless complaint without a without a reasonable pre-suit investigation because defendants "reiterate[d] the arguments in their dismissal motion" and "reference[d] events arising out of" a different lawsuit).

## B.   Defendant's Aspersions are Inappropriate and Irrelevant.

Regrettably, Defendant also makes use of inappropriate invectives, but its aspersions do not withstand scrutiny.   First, Defendant goes to great lengths to undermine the investigation of Mamavation, founded and powered by Leah Segedie, a mother who has successfully advocated for multinational corporations to reduce their reliance on toxic chemicals.[4]   Amid a growing concern about the chemicals used in products, including feminine hygiene products, *see* FAC ¶ 20, consumers are growing increasingly skeptical of the marketing tactics of corporations and seeking transparency and accountability.   As Defendant itself notes, another consumer activist Jessian Choy spurred an investigation into one of Knix's competitors, Thinx, and asked Dr. Graham Peaslee to conduct testing

---

[3] To the extent necessary to oppose the motion, Plaintiff addresses Defendant's merits-based arguments further below.

[4] For example, Mamavation played a key role in spurring the ban on Target's use of bisphenols in receipt paper to protect consumers and workers from exposure. *See* Target Chemicals, available at: *https://corporate.target.com/sustainability-esg/environment/chemicals*, (last accessed June 23, 2022) ("By switching to a phenol-free receipt paper, Target has taken a significant step in proactively ensuring the ongoing safety and health of our team members and guests.").

for which Choy published the results in an article. *See* Mot. at 8, Ex. 5. Similarly, Mamavation commissioned tests from an independent lab to test various brands of period underwear, including Knix, and published the results in a medically-reviewed article.[5] Defendant overlooks the significant role of activists in shaping business practices and developing the law. Despite Defendant's efforts to discredit and undermine the work of consumer activists, their contributions speak for themselves.

Second, Defendant also paints the picture of an opportunistic plaintiff firm racing to the courthouse to file frivolous complaints. Those images are also false and deliberately misleading. Plaintiffs' counsel is committed to holding companies accountable for deceptive advertising, and Defendant's related aspersions are inappropriate. *See D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1040 (9th Cir. 2008) ("The attempted use of past litigation to prevent a litigant from pursuing a valid claim in federal court warrants our most careful scrutiny."). Any issue Defendant personally takes with counsels' commitment to this developing area of consumer protection law is irrelevant. This case only concerns Defendant's representations and the resulting claims raised in the FAC to challenge misleading marketing that targets consumers' concerns about chemicals in feminine hygiene products. *See* FAC ¶ 20-22. Plaintiffs raised various claims, bolstered by supporting allegations, and Plaintiffs have plausibly stated those claims; Defendant is free to answer and dispute the allegations, provided it uses the correct vehicles to do so, and preferably withholds any further aspersions.

C.    **Defendant's Motion Fails as a Matter of Law.**

As discussed above, Defendant bears the burden to show, by clear and convincing evidence, that Plaintiffs' case is legally or factually baseless from an objective perspective *and* that Plaintiffs' counsel did not conduct a reasonable and competent inquiry. Importantly, "[t]he 'baseless' and 'reasonable inquiry' requirements are conjunctive, not disjunctive." *Benedict*, 2014 WL 234207, at *4. Despite Defendant's sole reliance on a frivolousness theory of sanctionable conduct, Defendant does not even raise both requirements. Instead, the sum total of Defendant's argument concerns only the reasonable inquiry requirement and makes no reference to the baseless requirement. *See* Mot. at

---

[5] While Defendant pinpoints the "low" pricing of its products, it does not indicate the expensive costs of testing. *See* Mot. at 19.

15-19 (focusing on whether counsel conducted a reasonable inquiry); *id.* at 20-22 (arguing that allegations show a lack of reasonable inquiry); 22-24 (requesting that the FAC be stricken and fees awarded).  Apparently, Defendant could not be bothered to review the relevant test under Ninth Circuit law.  Alternatively, Defendant knew the legal standard, but preferred to limit its frivolous arguments, as there is no reasonable argument that the case is either legally or factually baseless from an objective perspective.

In either case, this glaring gap in basic legal research strongly suggests, if not proves, that Defendant lacked a good faith, reasoned basis for its motion.  *See In re Crystal Cathedral Ministries*, 2020 WL 1649619, at *44 (Bankr. C.D. Cal. Mar. 31, 2020), *aff'd*, 2021 WL 2182975 (B.A.P. 9th Cir. May 28, 2021) ("observ[ing] that there is a line between zealous advocacy and frivolous, reckless advocacy," and finding counsel "crossed the line because making the arguments that he did without doing the basic legal research was baseless and reckless").  Because Defendant fails to meet its burden as a matter of law, the Court should deny its motion.

### D.   The FAC is Not Baseless From an Objective Perspective, and Defendant Makes No Showing to Prove Otherwise.

As previously discussed, Defendant has not even tried to show that the FAC is baseless from an objective perspective.  Nor could it.  At best, provided the most generous reading of Defendant's motion, Defendant indirectly argues that the FAC is baseless from its own perspective because it disputes the allegations and believes the Court should only credit its version of the facts.  But to Defendant's dismay, that is not the standard.

Defendant makes no showing that Plaintiffs' claims are legally baseless from an objective perspective.  "To be legally frivolous, a claim must not be 'warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.'"  *Rodriguez v. Int'l Bhd. of Boilermakers*, 2016 WL 913440, at *4 (N.D. Cal. Mar. 10, 2016) (citing Fed. R. Civ. P. 11(b)(2)).  "It must be 'patently clear that a claim has absolutely no chance of success under the existing precedents, and . . . no reasonable argument can be advanced to extend, modify or reverse the law as it stands.'"  *Id.* (citing *United States v. Stringfellow*, 911 F.2d 225, 226 (9th Cir. 1990) (per curiam)).  "The key question in assessing frivolousness is whether a complaint

states an arguable claim—not whether the pleader is correct in his perception of the law." *Id.* (quoting *Woodrum v. Woodward Cty., Okla.*, 866 F.2d 1121, 1127 (9th Cir. 1989)).  Defendant makes no arguments concerning any particular claims and cites no law remotely suggesting that Plaintiffs' claims have zero chance of success.  Instead, Defendant's cited cases concern motions to dismiss or motions for sanctions involving entirely factually distinct cases that could not be so unduly stretched to the present circumstances.

Neither does Defendant show that Plaintiffs' claims are factually baseless from an objective standard.  "Rule 11 sanctions are appropriate if the allegations and other factual contentions entirely lack evidentiary support."  *Benedict*, 2014 WL 234207, at *5 (citing *Stiglich v. Contra Costa Cty. Bd. of Supervisors*, 1997 WL 22410, at *8 (9th Cir. 1997)).  "A claim that has some plausible basis, even a weak one, is sufficient to avoid sanctions under Rule 11."  *Id.* (internal quotation marks and alterations omitted).  "The standard is not a high one."  *Id.*  "Further, circumstantial evidence, and the reasonable inferences drawn from that evidence, are treated as evidentiary support for purposes of Rule 11."  *Id.* (citation and internal quotations omitted).

Defendant does not overreach to argue that Plaintiffs' claims entirely lack evidentiary support.  Because the FAC meets the plausibility standard (or is readily curable for any deficiencies the Court identifies), Defendant simply "cannot say that the complaint is so lacking in plausibility as to make [Plaintiffs' counsel's] decision to sign and certify it subject to sanctions."  *See California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1472 (9th Cir. 1987) (reversing grant of Rule 11 sanctions, where although counsel did not produce "substantial support for the complaint" at summary judgment, "the suit was not so baseless that sanctions ought to be imposed").  Because the FAC is neither legally nor factually baseless, the Court should deny Defendant's motion.  *See Benedict*, 2014 WL 234207, at *9–11 (reviewing motion for sanctions based on a theory of frivolousness but denying motion in its entirety because the complaint was not baseless).

### E.  Plaintiffs' Counsel Conducted a Reasonable and Competent Inquiry.

Additionally, Plaintiffs' investigation was reasonable under the circumstances.  Plaintiffs' case is at the forefront of litigation that addresses consumers' concerns about chemicals in consumer

products.  Defendant suggests that reliance on third-party testing and purported lack of detail regarding the testing makes the filing of this case sanctionable.  That proposition is unsupported by law, and Defendant's bullying tactics effectively seek to intimidate Plaintiffs' counsel to forfeit their client's rights to pursue a remedy for deceptive marketing.  Rule 11 is not intended to chill an attorney's duty to represent her client zealously.  *Operating Engineers Pension Tr.*, 859 F.2d at 1345.[6]  Defendant does not, and cannot, show that a competent attorney could not form a reasonable belief that the FAC is well-founded.  There is no legal or factual error that undermines the case to render it so blatantly inexcusable to be sanctionable.

Among other steps, Plaintiffs' counsel conducted factual and legal research and consulted an expert prior to filing.[7]  Plaintiffs conducted their investigation in light of the precise representations Defendant made, and Plaintiffs' theory of the case directly tracks those representations.[8]  Defendant represents that its products are "[f]luorine-free," but independent lab results indicate that is not the case.  *See* FAC ¶ 45.  In furthering its position on the merits, Defendant apparently seeks to qualify its statement to say that it meant to say that its products are free of organic fluorine.  *See* Mot. at 6. But even viewing the allegations in the light most favorable to *Defendant*, it remains plausible that a reasonable consumer would expect fluorine-free products to not have *any* fluorine.  A Rule 11 motion is an improper vehicle for Defendant to further its position on this fact-based question.

Plaintiffs also challenge Defendant's misrepresentation that its products are "[f]ree of PFAS," based on supporting allegations beyond the lab results, including for example, allegations that Defendant cannot represent that its products are free of PFAS, when its OETEK certification only accounts for 30 of 9,000 known PFAs.  *See*, *e.g.*, FAC ¶ 49 ("OEKO-TEX tests for only 30+ [of] the most common PFAS chemicals directly like PFOA and they do not test their fabrics for fluorine at

---

[6] Further, Rule 11 "is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories."  Fed. R. Civ. P. 11 Notes of Advisory Committee on Rules (1983).

[7] In opposing Defendant's motion, Plaintiffs do not waive any work product privilege.

[8] Plaintiffs provide some discussion of the merits here only to the extent necessary to respond to Defendant's misplaced arguments, and not because they view it as the appropriate place to do so in the first instance. For purposes of clarity, Plaintiffs do not waive their objection to Defendant's misuse of the Rule 11 motion.

all"); *see also id.* ¶ 47 ("As Michael Hansen, PhD, senior scientist at Consumer Reports notes, 'no company should tell consumers that their products are 100 percent free of PFAS.'").  And even Defendant implicitly acknowledges that its testing for PFAS is only for a limited subset.  *Compare* Mot. at 9 ("Knix engaged a third-party lab to directly test Knix's finished products for certain PFAS commonly found in textiles) with Mot. at 5 ("There are thousands of different PFAS . . . ."); *see also* FAC ¶ (noting Defendant acknowledges there are "9000 different kinds of PFAS").

### 1. Defendant Purports to Challenge the Reasonableness of the Investigation but Instead Seeks to Further its Position on the Merits.

Defendant's other arguments as to the alleged lack of an adequate investigation consist of a series of merits-based arguments concerning its disagreement with the investigation and lab tests. But each of those arguments are particularly ill-suited for a Rule 11 motion, and in any case, wrong. *See Sciortino v. Pepsico, Inc.*, 108 F. Supp. 3d 780, 786, 794–95 (N.D. Cal. 2015) (refusing to entertain defendant's repeated fact-based arguments concerning third-party Consumer Reports testing and holding that "[t]o the extent that Pepsi wishes to challenge Plaintiffs' exposure calculation methodology, it can do so at summary judgment or at trial").

The FAC provides sufficient allegations concerning the investigation and lab results.  Despite Defendants' assertions to the contrary, the testing is adequately described in both the Mamavation article and the FAC.  *See, e.g.*, FAC ¶ 38 ("The study used a 100 parts-per-million metric, focusing on brands with amounts of fluorine in excess of 100 ppm, in order to separate out those brands that intentionally add fluorine to their underwear."); *id.* ¶ 39 ("Mamavation notes that it 'tested the most popular period panties (some up to 4x) looking for fluorine, the chemical that unites all PFAS chemicals'"); *id.* ¶ 45 ("Mamavation's study determined that exactly 3 brands of the period underwear had levels of fluorine over 100 ppm, including Defendant's High Rise period underwear, which contained 373 ppm of fluorine").

The FAC does not hide the source of the investigation, and other online sources provide great detail about the investigation and lab results.  For example, even an article *cited by Defendant*, in which Jessian Choy interviewed Leah Segedie, describes that the underlying lab results were completed at Galbraith Labs.  *See* Mot. at 8 n.13 (noting "Leah Segedie, founder of Mamavation, an

organization dedicated to eco-wellness, just released the first lab tests on PFAS in period and

incontinence underwear since my March 2020 article" and that "Mamavation sent 17 pairs of period

underwear from 14 brands to Galbraith Labs, a company accredited by the International Organization

for Standardization (ISO)").  When Defendant itself purports to have reviewed that article (and likely

other sources that reveal the same information and more), it is incredible that Defendant is so bold

to call the testing "anonymous" and to proceed to seek sanctions on that basis.  *See* Mot. at 3, 16-17.

This discrepancy is particularly ironic in light of Defendant's own allegations. *See* Mot. at 22

(speciously "suggesting" that counsel has not read cited sources or had deliberately misrepresented

them).

In any event, Defendant's argument that the precise underlying source of the lab results must

be alleged is unavailing.  Defendant cites no case law to support its position, and courts do not require

such particularity even under Rule 9(b).  In ruling on a motion to dismiss, Judge Orrick outright

rejected a similar argument:

> WellPet fixates on plaintiffs' allegation that the CORE product
> "contains a significant level of BPA of approximately 58.5 ppb," Am.
> Compl. ¶ 20, and contends that this is impermissibly vague because
> plaintiffs do not allege how they came up with this figure. Yet WellPet
> cites to no legal authority suggesting that plaintiffs' claims must fail
> for failure to provide background information on this figure in the
> complaint, nor does WellPet need such information at the pleadings
> stage in order to defend against plaintiffs' claims, since it must be
> accepted as true. Plaintiffs allegations are sufficient to put WellPet on
> notice of the circumstances giving rise to their claims, and as such,
> satisfy Rule 9(b).

*Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 850 (N.D. Cal. 2018); *see also Mancuso v. RFA Brands,*

*LLC*, 454 F. Supp. 3d 197, 202–05 (W.D.N.Y. 2020) (finding allegations plausible where plaintiff

claimed a product was "falsely represented to have a higher capacity than it actually had, based on

subsequent testing of a power bank of the same model," and finding that though allegations regarding

testing were "vague," plaintiff need not identify the "company that performed the testing" or describe

the "conditions of the test").

Generally, defendants have made variations of arguments demanding additional testing at the

pleading stage, and those lopsided arguments too have failed.  For example, in *Berke*, the plaintiff

1    alleged that defendants made false and misleading representations related to a brand of bottled water

2    that allegedly contained high levels of arsenic.  2020 WL 5802370, at *1.  The plaintiff based its

3    allegations on third-party tests conducted by Consumer Reports and the Center for Environmental

4    Health, and much like here, the defendants had also conducted their own tests.  *See id.*  In contrast

5    to this case, however, the defendants did not bring a Rule 11 motion on the basis that the plaintiff

6    had not conducted separate testing and relied on third-party testing.  *See generally id.*  But the

7    defendant made a related argument under Rule 12(b)(6) that the plaintiff lacked standing because

8    there was not additional testing for the water that the plaintiff had bought. *See id.* at *7.  That

9    argument failed. *See id*.

10    Notwithstanding Defendant's repeated criticism of third-party testing, courts routinely find

11    such testing provides sufficient evidentiary support at the pleadings stage.  *See, e.g.*, *Berke*, 2020 WL

12    5802370, at *7; *Stevens v. Britax Child Safety, Inc.*, 2021 WL 4706702, at *6 (C.D. Cal. July 13,

13    2021) ("Plaintiff supports these allegations with the findings from the Consumer Reports testing . . . .

14    Accepting these allegations as true, Plaintiff adequately pleads that Defendant's product is not fit for

15    its core function, keeping children safely restrained in the event of a collision. This suffices at the

16    pleading stage.").  Put simply, Defendant overreaches when it demands that a pleading (1) rely only

17    on non-third party testing and (2) outline all background information concerning a test result, or else

18    risk the threat of sanctions.  The FAC includes sufficient detail to provide Defendant with notice of

19    the claims against it, *see Zeiger*, 304 F. Supp. 3d at 850, but Defendant still chose to use a Rule 11

20    motion to argue the merits.

21    Unfortunately, the merits-based arguments do not end there.  Defendant multiplies its related

22    arguments to further improperly test the sufficiency of the allegations.  For example, Defendant

23    points to "a new PFAS screening method by measuring organic fluorine," ostensibly to suggest that

24    sanctions are warranted because no other method could be remotely plausible.  *See* Mot. at 7 & n.9.

25    But the EPA only recently proposed that "[d]raft [m]ethod" in April 2022, the same month the FAC

26    was filed.  *Compare id. with* FAC generally.  And Defendant fails to mention that the proposed draft

27    method applies for screening for fluorine compounds in water and wastewater. On one hand,

28    Defendant faults any reference to testing methods in other industries, but on the other hand, it

highlights a method focused on another industry apart from textiles.[9]  Defendant cannot have it both ways, especially when its own arguments undermine its extraordinary request for sanctions.  There are a variety of testing methods in this developing and complex area, and ultimately, the FAC includes supporting allegations regarding the testing methodology here.  *See*, *e.g.*, FAC ¶ 41.[10]

Next, Defendant appears to argue that the same results could suggest an alternative explanation, as "*inorganic fluoride*" may "exist naturally in the environment."  *See* Mot. at 6 (emphasis added).  To the extent the Court were inclined to credit Defendant's argument on the merits here, the results alleged do not indicate some small amount attributable to natural sources.  *See* FAC ¶ 45 (noting lab results indicated Defendant's High Rise period underwear contained 373 ppm of fluorine); *id.* at ¶ 38 (noting "amounts of fluorine in excess of 100 ppm" is used "to separate out those brands that intentionally add fluorine to their underwear").  Defendant notes that inorganic fluorides can be found in "drinking water and salt water" and "also are found in many common food items, such as black tea, raisins, potatoes and lettuce."  Mot. at 6.  But Defendant does not represent that there is any good reason to expect the textile products at issue should naturally contain inorganic fluorine, or any fluorine in such a high amount that indicates its intentional addition.  Accordingly, Defendant does not explain why a total fluorine test, and particularly one showing a patently high amount of fluorine, should not be sufficient for textile products that generally do not contain inorganic fluorine.[11]  Defendant instead only speculates about cross-contamination from other means and requests sanctions on the basis of its speculation.

In all, Defendant hinges its allegation of an inadequate investigation on a series of merits-based arguments concerning its disagreement with the investigation and lab tests.

---

[9] If anything, the threshold cited in the complaint was overly generous, particularly in light of the close bodily contact involved with the products at issue, as other countries and institutions have adopted thresholds that are significantly lower.

[10] Defendant's arguments to this end effectively show that there is not one and only one testing methodology acceptable in the area of textiles, so as to render other methods relied on at the pleadings stage sanctionable.

[11] Plaintiffs also stand by their allegation concerning the effects of fluorine, and Plaintiffs confirmed their reasonable reliance on the sources criticized by Defendant in its additional merits-based arguments. *See* Mot. at 20 (citing FAC ¶ 51).

## 2.     Defendant's Cases are Wholly Inapposite.

Defendant's cited cases only further show the baselessness of its motion.   Defendant primarily relies on four cases to support its contention that counsel "utterly failed to conduct a reasonable inquiry." Mot. at 17.  None of those cases support Defendant's arguments, and its other cases also provide no basis to support imposing sanctions here.

Defendant's case in chief is *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801 (E.D. Va. 2007), but Defendant's representation that "the court sanctioned an attorney for relying entirely on a New York Times article for factual assertions where the article attributed those 'facts' to 'anonymous sources'" is both astoundingly inaccurate and disingenuous.  *See* Mot. at 16.  First and foremost, there is no holding sanctioning any attorney.  Though the court briefly referenced Rule 11 in its holding, the court otherwise made no indication it was even considering imposing sanctions.  Instead, following the case's transfer, the court was considering the defendant's motion seeking reconsideration of the denial in part of its motion to dismiss.  *See Walker*, 517 F. Supp. 2d at 803, 807.  Ultimately, the court found that the complaint failed to allege facts to plausibly show standing, but it "dismiss[ed] the complaint without prejudice and [] permit[ed] the plaintiffs to file an amended complaint alleging additional facts to support standing." *Id.* at 809.  Accordingly, Defendant's glass house is built on its flimsy, wildly false assertion that the court sanctioned any attorney.

Second, Defendant is also wrong to suggest that the court found the article unreliable solely because the newspaper article contained anonymous sources.  More specifically, the *Walker* plaintiffs cited a *Times* article "reporting on the existence of the Terrorist Financing Tracking Program (TFTP), a post–9/11 initiative of the federal executive branch to track funds flowing to international terrorist organizations" and filed his suit on "the same day the *Times* article was published." *Id.* at 804-05.  Importantly, the Court emphasized that the article "reported conflicting comments from unnamed sources" and noted that the article could not be incorporated to fill factual holes in the complaint's allegations," as it had been done in the transferring court's order. *Id.* at 805–07.  Further, the court explained that it was troubled by the anonymous nature of the sources because

"unless the source is later identified, there is no way to verify the reliability of the information." *Id.* at 807.

Even if the *Walker* court had issued sanctions as Defendant rules it had, the case would still be distinguishable. The court found reliance on the article inappropriate because it relied on "anonymous sources *and* contain[ed] contradictory information." *See id.* at 807 (emphasis added). It appears the court's ruling was also influenced in some part by fact that the complaint "was filed the very day the *Times* article was published." *See id.* Here, Plaintiffs filed the FAC long after Mamavation reported the results of the lab testing, and as previously discussed, the FAC does not rely on an anonymous source, or an anonymous source with contradictory information.[12] And the nature of purported "anonymity" of the investigation is nothing like the anonymity involved with journalism. In fact, Defendant's own cited source indicates the identity of the lab.

Additionally, Defendant's reliance on *Walker* is unavailing for the same reasons outlined in *Mey v. Medguard Alert, Inc.*, 2020 WL 1258639, at *3 (N.D.W. Va. Mar. 16, 2020). The *Mey* court explained "the fact that plaintiff did not name this individual in the complaint does not make this equivalent to an anonymous newspaper source." *Id.* It noted that the defendants could "seek to obtain more information" through discovery, and that "if information is lacking, are free to move for summary judgment." *Id.* It also rejected the defendant's argument that the court needed the underlying details to "evaluate the veracity" of the allegations, explaining that "[e]valuating the veracity of the allegations is not the standard on a motion under 12(b)(6)." *Id.*

Notably, Defendant's description of the holding in *Urenia v. Pub. Storage*, 2015 WL 3378247, at *3 (C.D. Cal. May 7, 2015), another case involving reliance on a newspaper article, is also misleadingly incomplete. In *Urenia*, the court issued sanctions because it found the newspaper "article provided *no* support for the allegations against" the defendant and, importantly, that the allegations were inconsistent with the pleading itself; further, the court noted that the Magistrate

---

[12] The Court should also reject Defendant's efforts to dispute the merits when it suggests there is purportedly contradictory information by reference to information outside of the investigation at hand here. *See* Mot. at 11.

1    Judge had admonished the plaintiffs' counsel for failing to tie the defendant to the plaintiffs' claim.

2    *Id.* at *3 & n.1 (emphasis added).

3           Defendant's other cases are no more help.  Defendant cites to various securities cases, but it

4    does not explain why these securities cases should be extended to a non-securities case.  But in any

5    event, no case presents analogous circumstances.  For example, in *In re Australia & New Zealand*

6    *Banking Grp. Ltd. Sec. Litig.*, 712 F. Supp. 2d 255, 258 (S.D.N.Y. 2010), the court acted pursuant to

7    its duty pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA") to "make

8    specific findings regarding compliance by each party and each attorney with Rule 11 of the Federal

9    Rules of Civil Procedure."  The court ultimately found that sanctions were warranted because the

10   central allegation was directly mischaracterized: specifically, the plaintiff had falsely indicated that

11   a June 2008 article indicated that internal emails from March 2008 were dated a whole year earlier

12   than the article actually said, and this mischaracterization  "enabled plaintiff to begin the Class Period

13   a full twelve months sooner than the plaintiff otherwise could have."  *See id.* at 261–62, 264.  And

14   the plaintiff "effectively concede[d] that the March 2007 emails simply did not exist."  *Id.* at 264.

15   Here, Plaintiffs have made no such gross error.  *See Scott v. Vantage Corp.*, No. CV 17-448-MPT,

16   2021 WL 3145223, at *9 (D. Del. July 25, 2021) (distinguishing *In re Australia* because the case

17   involved "additional facts not present here," including that counsel admitted the obviously "frivolous

18   allegation" was unfounded).

19          Further, Defendant's brief references to other securities cases also have no bearing here.  *See*

20   *In re Connetics Corp. Sec. Litig.*, 542 F. Supp. 996, 1004–06 (N.D. Cal. 2008) (granting motion

21   to strike allegations that relied entirely on a complaint filed by the SEC); *Veal v. LendingClub Corp.*,

22   423 F. Supp. 3d 785, 811, 819 (N.D. Cal. 2019) (declining to credit certain allegations pulled from

23   FTC complaint because "[b]eing accused of wrongdoing is not basis for securities fraud," but

24   granting motion to dismiss with leave to amend); *see also Attia v. Google LLC*, 2018 WL 2971049,

25   at *14 (N.D. Cal. June 13, 2018) (striking allegations where "sole basis for pleading a pattern of

26   predicate acts under RICO . . . derives from the existence of six lawsuits filed against Google").

27          Similarly, Defendant's citation to *O'Rourke v. Dominion Voting Sys. Inc.*, is in no way

28   analogous.  *See* 2021 WL 3400671 (D. Colo. Aug. 3, 2021), *modified on reconsideration*, 2021 WL

5548129 (D. Colo. Oct. 5, 2021), and *appeal dismissed*, 2021 WL 8317149 (10th Cir. Dec. 23, 2021). *O'Rourke* involved far-fetched allegations that plaintiffs' "constitutional right to vote for President somehow was unconstitutionally infringed or burdened by the Defendants." *Id.* at *1174. The court described the "wide-ranging, scatter-shot" complaint as "one enormous conspiracy theory" and indicated that it "was not a normal case in any sense," explaining that the allegations were "extraordinarily serious and, if accepted as true by large numbers of people, are the stuff of which violent insurrections are made." *Id.* at *1175–76, 1180. It noted that the "proposed Amended Complaint doubled down in making inflammatory accusations about the allegedly nefarious motives and intentions of the Defendants," but entirely failed to address the plaintiffs' lack of standing and the "conspicuous personal jurisdictional problems raised by suing, in federal court in Colorado, state government officials from Pennsylvania, Wisconsin, Georgia, and Michigan, for acts taken in connection with their official duties in those respective states." *Id.* at *1178–79.

Significantly, there was a "'veritable tsunami' of adverse precedent" concerning "[n]umerous other cases involving the 2020 Presidential election" with similar claims that were dismissed for lack of standing, and only "frivolous" efforts to distinguish those cases. *See id.* at *1181–82. With respect to the "patent deficiency" as to personal jurisdiction, the court noted that "[i]t should have been as obvious to Plaintiffs' counsel as it would be to a first-year civil procedure student that there was no legal or factual basis to assert personal jurisdiction . . . ." *Id.* at *1183. The court thus ruled that "[f]iling a lawsuit against an out-of-state defendant with no plausible good faith justification for the assertion of personal jurisdiction or venue is sanctionable conduct." *Id.* at *1185.

The court also emphasized that given that "many, if not all, of the prior lawsuits had been rejected on both procedural and substantive grounds, Plaintiffs' counsel had a heightened duty of diligence and investigation before filing a copy-job pleading containing the same previously rejected theories and allegations." *Id.* at *1192. Additionally, the court noted that "Plaintiffs' counsel were (or should have been) on notice . . . that all of these allegations were heavily disputed, that none had been accepted as true or verified by any government agency or court, that independent investigations by reputable news sources had found no evidence to support the allegations, and that many had been comprehensively rebutted by authoritative sources." *Id.* at *1197. Despite the court's recognition

that "sanctions are to be rarely imposed," it determined that the suit "was filed with a woeful lack of investigation into the law and (under the circumstances) the facts." *Id.* at *1199.

*O'Rourke* is inapposite for several reasons, including that this case's allegations are not far-fetched, involve no obvious deficiencies as to standing or personal jurisdiction, and have not been widely rebutted by authoritative sources.

Lastly, Defendant's reliance on *Ideal Instruments, Inc. v. Rivard Instruments, Inc.*, 243 F.R.D. 322 (N.D. Iowa 2007), is also unavailing. Because Defendant paid no attention to the relevant Ninth Circuit test, it is no surprise that it cites a case that is patently inapplicable. Because the motion for sanctions challenged the filing of a preliminary injunction, and not a complaint, the court's inquiry under Eighth Circuit law is neither binding nor persuasive. *Id.* at 334 ("Therefore, the court will consider the standards for imposition of sanctions as articulated by the Eighth Circuit Court of Appeals."). To the extent Defendant argues the case still holds some persuasive value, then it would be contrary to holdings within this circuit. As previously discussed, courts routinely find third-party testing provides sufficient evidentiary support at the pleadings stage. *See, e.g.*, *Stevens*, 2021 WL 4706702, at *6 ("Plaintiff supports these allegations with the findings from the Consumer Reports testing. . . . This suffices at the pleading stage."). In short, Defendant mischaracterizes its key cases to meet its ends, but they provide no support for the extraordinary relief Defendant requests.

## F.     The Court In Its Own Discretion May Impose Sanctions Against Defendant.

Defendant has utterly failed to meet its heavy burden. Defendant did not even try to meet the unambiguous applicable legal standard. Plaintiffs maintain that such a failure, particularly in the context of a requesting relief that is reserved for rare circumstances, is inexcusable.[13] Further, Defendant otherwise filled its motion with arguments to further its position on the merits, a use that

---

[13] "[T]he filing of a motion for sanctions is itself subject to the requirements of the rule and can lead to sanctions." Fed. R. Civ. P. 11 Notes of Advisory Committee on Rules (1993). This is for good reason, as Rule 11 motions "carry with them unavoidable allegations of professional misconduct by counsel, and if found, constitute a reportable event to admission committees, bar associations, and other professional organizations. They have inherently negative repercussions that often 'poison the well' between competing counsel in a way that can needlessly harm the prospects for civility and professionalism between members of the bar." *See Syneron Med. Ltd. v. Viora Ltd.*, 2014 WL 7140643, at *5 (E.D. Tex. Dec. 12, 2014).

is at odds with the scope of Rule 11.  And to top it off, Defendant grossly mischaracterized its key supporting case when it claimed that purportedly analogous conduct was sanctioned, when even a cursory reading of that case shows that is outright false.  On all counts, "[c]ounsel failed to conduct a reasonable legal inquiry before [they] made these arguments in this contested matter forcing the court and opposing counsel to undertake bothersome factual and legal investigation in violation of his duty to his adversaries to avoid needless legal costs and delay and to the legal system to avoid clogging the court with arguments that wasted judicial time." *See In re Crystal Cathedral Ministries*, 2020 WL 1649619, at *44.

Notably, Plaintiffs were required to oppose the Rule 11 motion on the same timeline as opposing Defendant's motion to dismiss.  It appears the purpose of Defendant's motion was to clog Plaintiffs with more work, intimidate Plaintiffs' counsel into abandoning their clients' interests, or both.  Unfortunately, "[t]he use of Rule 11 as an additional tactic of intimidation and harassment has become part of the so-called 'hardball' litigation techniques espoused by some firms and their clients." *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 485 (3d Cir. 1987).  It is indisputable that counsel cannot use Rule 11 as a weapon for improper, "hardball" litigation techniques.  *See*, *e.g.*, *id.* (cautioning practitioners "that they invite retribution from courts which are far from enchanted with such abusive conduct."); *Rich v. Taser Int'l, Inc.*, 2012 WL 3155137, at *3 (D. Nev. Aug. 2, 2012) (same). But Defendant proceeded with little to no reasonable caution and filed a motion with egregious inaccuracies and easily avoidable blunders.  Even if the Court in its own discretion does not find Defendant or its counsel's conduct sanctionable, Plaintiffs nonetheless respectfully request reasonable expenses, including attorneys' fees incurred in opposing the Rule 11 motion pursuant to Rule 11(c)(2).

## III.    CONCLUSION

In all, Defendant raises ill-suited merits-based arguments and effectively pronounces what it deems the pleading requirements to avoid sanctions.  But Defendant falls extraordinarily short on its heavy burden of proof. Defendant fails to show that Plaintiffs' case is legally or factually baseless from an objective perspective or that Plaintiffs' counsel did not conduct a reasonable and competent

1

2

3

4

5

inquiry.  To the contrary, it is Defendant that failed to conduct basic legal research as to the relevant legal standard and scope of Rule 11.   Defendant also made more than one egregious mischaracterization and contradictory argument.  Accordingly, Plaintiffs respectfully request that the Court deny Defendant's motion, order sanctions against Defendant or its counsel as it deems appropriate, and award Plaintiffs' reasonable expenses pursuant to Rule 11(c)(2).

6

7

8

Dated:  June 24, 2022

9

10

11

12

13

14

15

16

17

18

19

Respectfully submitted,

**BURSOR & FISHER, P.A**.

By:    /s/ *Sean L. Litteral*
             Sean L. Litteral

Sean L. Litteral (State Bar No. 331985)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: slitteral@buror.com

**BURSOR & FISHER, P.A.**
Rachel L. Miller (*pro hac vice* forthcoming)
701 Brickell Ave., Suite 1420
Miami, FL 33131
Tel: (305) 330-5512
Facsimile: (305) 676-9006
E-mail: rmiller@bursor.com

*Attorneys for Plaintiffs*

20

21

22

23

24

25

26

27

28